**Federico FANO, Plaintiff-Appellant,**

**v.**

**Paul B. O'NEILL, Individually and As District Director of the Immigration & Naturalization Service for the Houston Division, Defendant-Appellee.**

**No. 86–2164.**

United States Court of Appeals,
Fifth Circuit.

Jan. 5, 1987.

Alan Vomacka, M. Edwin Prud'homme, Houston, Tex., for plaintiff-appellant.

Samuel G. Longora, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Frank A. Conforti, James R. Gough, Asst. U.S. Attys., Houston, Tex., for defendant-appellee.

Before CLARK, Chief Judge, REAVLEY and WILLIAMS, Circuit Judges.

REAVLEY, Circuit Judge:

Federico Fano claims he lost an opportunity to obtain permanent resident status in this country because the Immigration and Naturalization Service (INS), violating its internal procedures, wilfully delayed the processing of his application. The district court granted summary judgment in favor of the government. We reverse.

**I**

Fano is a citizen of Mexico by birth. His father is employed in Houston, Texas as vice president of a subsidiary of a Mexican oil and gas concern. On August 10, 1983, Fano's father applied for permanent resident status based on his professional qualifications and a petition filed by his employer. *See* 8 U.S.C. § 1153(a)(3). On that same date, Fano, his mother, and other members of the immediate family also applied for permanent resident status under statutory provisions allowing them to claim derivative status. 8 U.S.C. § 1153(a)(8). For the children to qualify, they had to be under twenty-one years of age and unmarried. 8 U.S.C. § 1101(b)(1).

At the time of application, Fano's twenty-first birthday was only eight months away. Moreover, beginning October 1, 1983, visa numbers for applicants such as Fano's father would be unavailable for a period of one year. Since Fano would turn twenty-one years old during this year, he would lose the opportunity to obtain derivative resident status unless his application was adjudicated prior to October 1, 1983. With these considerations in mind, Fano's attorney urged the INS officer to expedite the handling of Fano's application.

In urging prompt action, Fano relied on what he alleges is the INS' common practice in such situations. In particular, Fano pointed to an INS Operations Instruction (OI) that provides:

When during August or September, a visa number is urgently needed in a case in which all Service action has been completed, a request shall be submitted to the Associate Commissioner, Examinations, for allocation of a number.

INS Operations Instruction 245.4(a)(2). Fano claims that had the INS followed this provision, he would have received his visa number prior to his twenty-first birthday.

The INS did not act on Fano's application prior to October 1, 1983. In November 1984, Fano's father, mother, and five siblings were notified that their applications were approved. Fano was told, however, that his application was denied because he was over twenty-one years old. The INS insists that Fano must now reapply for resident alien status under a separate statutory provision. Although the INS has suggested it will not deport Fano absent some misconduct, it is undisputed that this reapplication process will involve considerable delay and several interim restrictions on Fano's ability to work and live in the United States. The INS has not offered any explanation for its delay in processing Fano's original application.

Shortly after filing a complaint in the district court, Fano moved for summary judgment on the ground that the INS is bound by the OI and cannot now deny him the resident status he would have obtained had the OI been followed. The district court denied this motion, and instead granted the INS' motion for summary judgment, primarily on the ground that Fano had failed to show unreasonable delay by the INS. Fano appeals this ruling.

**II**

Fano argues that summary judgment was improper because of fact issues surrounding the effect of the OI. He argues that the OI was in fact violated, that it binds the INS, and that he is therefore entitled to relief. We can assume that the OI was violated. However, we agree with the district court that the OI does not bind

the INS and that its violation, by itself, does not entitle Fano to relief.

The Supreme Court has stated that "[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." *Morton v. Ruiz*, 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974). As the Court has made clear in subsequent cases, however, "not all agency publications are of binding force." *Lyng v. Payne*, — U.S. —, 106 S.Ct. 2333, 2341, 90 L.Ed.2d 921 (1986). In *Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981), the Court held that a provision in a Social Security Administration (SSA) Claims Manual instructing SSA employees to encourage claimants to file written applications was not a binding agency rule. The Court stated that the manual was for the internal use of SSA employees and its violation did not entitle the claimant in that case to relief from her failure to file a written application.

In accord with *Schweiker*, this circuit has on at least three occasions concluded that INS OI's do not have the force of law. In *Ponce-Gonzalez v. INS*, 775 F.2d 1342, 1346 (5th Cir.1985), for example, we held that OI's are "only internal guidelines for INS personnel, and neither confer upon petitioner substantive rights nor provide procedures upon which he may rely." Accordingly, we held that an apparent INS violation of an OI requiring investigation of an alien's eligibility for statutory relief from deportation did not prevent the INS from later deporting the individual. *See also Dong Sik Kwon v. INS*, 646 F.2d 909, 918–19 (5th Cir.1981) (en banc); *Soon Bok Yoon v. INS*, 538 F.2d 1211, 1213 (5th Cir.1976).

Fano argues that these cases should not be read to determine the status of the present OI. Instead, he argues that the present OI should be given binding effect because it speaks in mandatory terms and implicates important substantive rights. Fano misreads our cases. If mandatory terms and an impact on substantive rights were sufficient to give an agency rule binding effect, then *Schweiker* and each of our prior cases discussed above were incorrectly decided. We have held OI's to be nonbinding not because they do not affect the individuals dealing with the INS but because they are not an exercise of delegated legislative power and do not purport to be anything other than internal house-keeping measures. *See Kwon*, 646 F.2d at 918–19 ("[OI's] furnish only general guidance for service employees."). In this regard, the OI in the present case is indistinguishable from those considered in our prior cases. We hold, in accord with our prior decisions, that the INS' alleged violation of its OI does not, standing alone, afford Fano a remedy.[1]

### III

Fano also argues that summary judgment was improper because of factual issues surrounding the reasons for the INS' delay in processing his application. His apparent position is that because of its failure to follow its OI and its unexplained delay, the INS should be estopped to rely on the fact that he is no longer a minor. We agree with Fano that the government has failed to meet its burden, as the moving party for summary judgment, to show the absence of genuine issues of material fact.

The Supreme Court has indicated, without deciding, that equitable relief may be

---

1. Taken on its face, the language in *Ruiz* that agencies must follow their own procedures when the "rights of individuals are affected" supports Fano's position. However, in light of *Schweiker* and *Lying*, we do not believe that this statement from *Ruiz* can be read so broadly. *See also Sullivan v. United States*, 348 U.S. 170, 184, 75 S.Ct. 182, 184, 99 L.Ed. 210 (1954) (refusing to enforce against the United States a "housekeeping provision" that required United States attorneys to obtain authorization before presenting evidence of tax violations to a grand jury); 2 K. Davis, Administrative Law Treatise § 7:21 (2d ed. 1979) (noting that *Ruiz* is not a "safe guide for the future"); Raven-Hansen, *Regulatory Estoppel: When Agencies Break Their Own "Laws,"* 64 Tex.L.Rev. 1, 18 (1985) ("[T]he *Ruiz* Court simply overstated the applicable principle.").

available to a private party aggrieved by certain conduct of government officials. *See Heckler v. Community Health Services,* 467 U.S. 51, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984); *INS v. Miranda,* 459 U.S. 14, 19, 103 S.Ct. 281, 284, 74 L.Ed.2d 12 (1982); *INS v. Hibi,* 414 U.S. 5, 8–9, 94 S.Ct. 19, 21–22, 38 L.Ed.2d 7 (1973); *Montana v. Kennedy,* 366 U.S. 308, 314–15, 81 S.Ct. 1336, 1340–41, 6 L.Ed.2d 313 (1961). At the same time, the Court has stated that "it is well-settled that the Government may not be estopped on the same terms as any other litigant." *Heckler,* 104 S.Ct. at 2224; *see also id.* at 2228 (Rehnquist, J., concurring) ("[O]ur cases have left open the possibility of estoppel against the Government only in a rather narrow possible range of circumstances."). The Court has not elaborated on the type of conduct that would give rise to an estoppel. It has, however, suggested that estoppel might be appropriate when the "public interest in ensuring that the Government can enforce the law free from estoppel [is] outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government." *Heckler,* 104 S.Ct. at 2224.

Although the Court has declined to give more specific guidance than this, we can glean from the facts of its cases some idea of the appropriate standards for determining when the government may be estopped. Those cases indicate that a party seeking to estop the government bears a quite heavy burden. In *Schweiker v. Hansen, supra,* for example, the Court refused to estop the government from denying social security benefits to a person who was erroneously told by a government official she was not eligible for such benefits and who therefore did not file the required written application. The Court felt that the erroneous information, even when coupled with the official's failure to recommend, as required by SSA procedures, that the applicant file a written application anyway, did not obviate the courts' duty to " 'observe the conditions defined by Congress for charging the public treasury.' " 450 U.S. at 788, 101 S.Ct. at 1471 (citing *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 385, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947)).

The Court has similarly treated claims for equitable relief in the area of immigration and naturalization. In *Montana v. Kennedy,* the Court declined to estop the government from relying on the petitioner's foreign birth as a basis for denying citizenship even though the petitioner's mother was erroneously informed just prior to petitioner's birth that she could not return to the United States. 366 U.S. at 314–15, 81 S.Ct. at 1340–41. In *INS v. Hibi,* the petitioner lost an opportunity for naturalization because of the executive branch's failure to more fully publicize relaxed naturalization requirements for aliens who served with the United States Armed Forces and to station representatives in foreign countries to facilitate naturalization of such persons. Despite the dissent's contention that the executive branch had deliberately subverted congressional intent, the Court held that the government's conduct did not give rise to an estoppel. 414 U.S. at 8–9, 94 S.Ct. at 21–22. Finally, in *INS v. Miranda,* a case quite similar to the present one, the Court held that the INS' eighteen-month delay in processing an application did not prevent the INS from denying permanent resident status to an applicant who became ineligible for such status during the period of delay. 459 U.S. at 18, 103 S.Ct. at 283. In each of these cases, the Court has indicated that some sort of "affirmative misconduct" must be shown before equitable relief can be afforded.

In light of these cases, to state a cause of action for estoppel against the government, a private party must allege more than mere negligence, delay, inaction, or failure to follow an internal agency guideline. Although we make no comment on Fano's ability to ultimately prevail at trial, we believe that Fano has adequately stated such a claim. His complaint alleges that the INS "willfully, wantonly, recklessly, and negligently" delayed in processing his application and that this delay caused him to be denied permanent resident alien

status. He further asserts that the INS has a common practice of expediting applications such as his, thus suggesting that the INS singled out his application for discriminatory treatment. We conclude that Fano's allegations of willfulness, wantonness, and recklessness are broad enough to encompass the type of conduct sufficient for estoppel. Certainly, Fano could have better stated his claim, but we do not believe his failure to use the words "affirmative misconduct" or to specifically state facts he has not yet had time to discover justifies dismissing his claim.

The government's argument in support of summary judgment is that Fano has failed to show any evidence in support of his allegations. To resist summary judgment, however, Fano was not required to prove his allegations. Had the government discharged its burden of production as the moving party for summary judgment, Fano would have been required to raise a fact issue on his material allegations. The government has done nothing more, however, than to say in its motion that Fano failed to state a claim and lacks evidence to prove the claim.[2] This plainly is insufficient to support summary judgment in its favor. The Supreme Court recently held that a party moving for summary judgment need not produce evidence negating the nonmovant's claim to force him to go beyond his allegations in a case, where after discovery, the depositions, answers to interrogatories, and admissions on file show no genuine issue of material fact. *Celotex Corp. v. Catrett*, — U.S. —, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190 (5th Cir.1986) (defendant moving for summary judgment need not adduce positive proof of the absence of evidence supporting plaintiff's claims if there has been "ample time for discovery"). The record in this case discloses that the parties moved for summary judgment shortly after the INS filed its answer to the complaint and that neither party has conducted any discovery. The government at this point cannot legitimately claim that the pleadings and other papers in the record show the absence of a material issue of fact.

*Celotex* does not change the settled rule that "[i]t is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case." 106 S.Ct. at 2555 (White, J., concurring); *see also id.* at 2557 (Brennan, J., dissenting) ("Plainly, a conclusory assertion that the nonmoving party has no evidence is insufficient.... Rather, as the Court confirms, a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record.").

The government has made no affirmative presentation to negate Fano's claims, but it only urged that Fano stated no claim. Summary judgment was premature.

REVERSED AND REMANDED.

---

**2.** The government also asserted that the OI is not binding and that Fano's claim is moot because the government has promised not to deport him absent serious misconduct. However, equitable relief might still be appropriate despite the nonbinding nature of the OI and the government does not dispute that, even absent deportation, Fano's failure to obtain derivative permanent resident status has significantly restricted his ability to live and work in the United States until he can again qualify for such status.