IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-20114
_____

DIANE KROBUSEK PEREZ,
                    Plaintiff-Appellant

                              versus

UNITED STATES OF AMERICA
                    Defendant-Appellee

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

February 12, 1999

Before HIGGINBOTHAM, DUHÉ, and DeMOSS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

    The plaintiff in this appeal challenges the district court's
conclusion that her action against the government was time-barred.
The case requires us to decide whether equitable tolling is
available in tort cases against the government and whether it is
applicable on the facts presented.  We find it both available and
applicable, and thus REVERSE.

                              I

    While performing with other members of her student belly-
dancing troupe at the Brazos Festival in College Station, Texas,
Diane Krobusek Perez stopped to pose for pictures in front of an
Armored Personnel Carrier.  The Texas National Guard had placed the
APC on display to promote its recruitment efforts at the festival.

According to Perez, the presence of the scantily clad dancers distracted the guardsmen in charge from their duties, and they did not stop a third party from entering the APC and disengaging the hand brake. The vehicle began to roll forward, and it struck camouflage netting poles that in turn knocked Perez unconscious. The date was September 29, 1990.

After the incident, Perez enlisted the aid of Matthew Nancarrow, a Texas A&M student services attorney, who wrote a letter to the Texas National Guard. The letter reported the charge that the guards' negligent supervision and lack of proper security proximately caused the injuries Perez had suffered. It further indicated that Perez was interested only "in pursuing indemnification for the actual damages sustained." Finally, the letter requested advice "as to whether your outfit is self-insured or maintains private liability insurance and who might handle my clients' [sic] claim."

Lt. Col. Donald R. Nichols later testified that he received the letter and tried to call Nancarrow. Because Nancarrow was out, Nichols left a message with his secretary. Specifically, he allegedly informed her that any claim Perez might pursue should be filed with the United States Army Claims Office, and he provided her the address of that office. A notation on Nancarrow's original letter, purportedly written immediately after the phone call, indicates that Nichols called Nancarrow's telephone number, that Nancarrow was out of town, that he left the message concerning the Claims Office, and that the date was October 11, 1990. Nancarrow

2

later testified that he does not remember receiving Nichols's message.

On September 10, 1991, Perez filed suit in Texas state court against the State of Texas, the Texas National Guard, and Christopher Heck, who allegedly disengaged the hand brake. A year later, on September 18, 1992, she filed an amended petition. After another year and a half, on March 11, 1994, Texas National Guard Captain Foy Watson advised Perez's new attorney that the guardsmen had been acting as employees of the federal government while on duty at the festival. See 32 U.S.C. § 502 (providing a dual state-federal status for members of the National Guard). In accordance with this theory, Texas and the Texas National Guard sought summary judgment on the basis of state sovereign immunity on July 29, 1994. This motion was denied, but a subsequent motion to dismiss was granted on June 14, 1995.

On June 30, 1995, the plaintiff filed a claim with the U.S. Army, and the Army denied it four months later, citing the two-year statute of limitations of the Federal Tort Claims Act. See 28 U.S.C. § 2401(b) (providing that a claim "shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after . . . notice of final denial of the claim by the agency to which it was presented"). The following May, Perez filed this suit.

The district court dismissed the suit, concluding that notice to the appropriate federal agency is a jurisdictional prerequisite

under the FTCA, citing Cook v. United States, 978 F.2d 164, 166 (5th Cir. 1992), and refusing to follow Schmidt v. United States, 933 F.2d 639 (8th Cir. 1991). The district court was persuaded that Perez had failed to investigate the nature of her claim diligently, and thus failed to recognize that the Texas National Guard has a dual nature, sometimes serving the federal government and sometimes serving the state. The court agreed that the National Guard had violated regulatory requirements by failing to provide Perez with an SF95 claim form. Nonetheless, emphasizing that Perez's decision to sue the Texas National Guard was not the product of affirmative misstatements by the Texas National Guard, the court refused to save her claim through application of equitable tolling.

Perez timely appeals, arguing that equitable tolling should apply.

                                II

The district court's citation to Cook notwithstanding, whether the limitations provisions of the FTCA are jurisdictional--in which case equitable tolling could not apply--remains an open question in this circuit. The Cook court did state that "[f]urnishing notice [within the specified time period] is a jurisdictional prerequisite to filing suit under the FTCA." 978 F.2d at 166. This statement, however, was dicta, because nothing in the case turned on whether the limitations provisions were jurisdictional. The Cook court did not specifically mention equitable tolling, and nothing in its

4

presentation of the facts suggests that equitable tolling would have been applicable had the court found it available.

Moreover, the case that <u>Cook</u> cited for the dictum was <u>Transco Leasing Corp. v. United States</u>, 896 F.2d 1435, 1441 (5th Cir.), <u>amended on other grounds</u>, 905 F.2d 61 (5th Cir. 1990). <u>Transco</u> is clear enough, but it preceded the Supreme Court's decision in <u>Irwin v. Department of Veterans Affairs</u>, 498 U.S. 89, 94-96 (1990), by several months. <u>Irwin</u>, a Title VII case, undid the old rule that equitable tolling was never available against the government, and thus placed the jurisdictional nature of the FTCA statute of limitations into doubt. <u>Cf.</u> <u>Houston v. United States Postal Serv.</u>, 823 F.2d 896 (5th Cir. 1987) (applying the old rule to the FTCA). It is thus to <u>Irwin</u> and its progeny that we must turn for guidance.

The <u>Irwin</u> Court reasoned that where Congress has decided to waive its sovereign immunity, there should be no presumption that it nevertheless intended that equitable tolling not apply. <u>See id.</u> at 95 ("Once Congress has made such a waiver, we think that making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits, amounts to little, if any, broadening of the congressional waiver."). While the Court stressed that it sought to create a single rule applicable to a wide variety of statutory circumstances, <u>see id.</u> (arguing against a continuing effort to decide such questions "on an ad hoc basis"), its reasoning accepts that the availability of equitable tolling is a question of congressional intent.

5

Accordingly, the Supreme Court in United States v. Brockamp, 519 U.S. 347 (1997), found that Congress had exempted the government from equitable tolling in I.R.C. § 6511. The Brockamp Court echoed Irwin in phrasing the question, "Is there good reason to believe that Congress did not want the equitable tolling doctrine to apply [against the government]?" Id. at 851. In answering "yes," for § 6511, the Court emphasized two factors. First, § 6511's limitations period was set forth "in a highly detailed technical manner that linguistically speaking, cannot easily be read as containing implicit exceptions." Id. at 851. Second, given the large number of tax returns and refunds processed by the IRS, "[t]he nature and potential magnitude of the administrative problem suggest that Congress decided to pay the price of occasional unfairness in individual cases (penalizing a taxpayer whose claim is unavoidably delayed) in order to maintain a more workable tax enforcement system." Id. at 852.

Two circuits have addressed the equitable tolling issue under the FTCA. In Schmidt, the district court decided a disputed fact in dismissing a claim as time barred. The Schmidt court concluded, without repair to the language or history of the FTCA, that Irwin necessarily meant that the statute was not jurisdictional, hence the district court lacked the authority to find jurisdictional facts. See 933 F.2d at 640. Glarner v. United States, 30 F.3d 697 (6th Cir. 1994), followed Schmidt, allowing equitable tolling.

The Sixth and Eighth Circuits arrived at the same result that we will reach, but their reasoning was flawed. Both were decided

6

after <u>Irwin</u> but before <u>Brockamp</u>. Both the <u>Schmidt</u> and <u>Glarner</u> courts seemed to believe that the <u>Irwin</u> rule allowing equitable tolling would apply in all suits against the government. <u>Brockamp</u> proves this deduction incorrect, so the Eighth and Sixth Circuits may reconsider <u>Schmidt</u> and <u>Glarner</u>. We therefore consider the FTCA issue afresh, though this fresh look ultimately leads to the same place.

The only commentator addressing the question concludes that the doctrine of equitable tolling should not apply to the FTCA. <u>See</u> Richard Parker, <u>Is the Doctrine of Equitable Tolling Applicable to the Limitations Periods in the Federal Tort Claims Act?</u>, 135 MIL. L. REV. 1 (1992). Arguing from the text of the statute, Parker argues that the language "forever barred" in § 2401 suggests an intent to treat late claims harshly. Parker's primary legislative history argument is that Congress did not pass the FTCA "in a vacuum," but "acted against a background of extant federal legislation--including other waivers of sovereign immunity, some of which contained tolling provisions." <u>Id.</u> at 10. He also argues that Congress's failure to amend the statute by adding tolling provisions, despite other amendments in 1948 and 1949, and despite adding a tolling provision for claims brought by the government in 1966, indicates a desire not to allow tolling in FTCA cases.

These signals are ultimately equivocal at best. First, the use of the words "forever barred" is irrelevant to equitable tolling, which properly conceived does not resuscitate stale claims, but rather prevents them from becoming stale in the first

7

place. Second, the Congress that drafted Title VII presumably wrote against a similar background of limitations provisions, yet this did not lead the Irwin Court to conclude that Congress assumed a default rule barring equitable tolling. Third, deductions from congressional inaction are notoriously unreliable. See, e.g., Lindahl v. Office of Personnel Management, 470 U.S. 768, 803 n.3 (1985) (White, J., dissenting); cf. United States v. Price, 361 U.S. 304, 313 (1960) ("[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.").

Perhaps these pieces of evidence are the best that can be collected from a legislative record that does not directly address the issue, but they are insufficient to overcome the presumption of Irwin that the government is subject to equitable tolling. Moreover, neither of the factors identified in Brockamp as supporting a conclusion that the provision was jurisdictional applies.

First, Section 2401 is a garden variety limitations provision, without the attention to detail in § 6511 that suggested preemption of equitable remedies. The latter section includes four different sets of rules that the Supreme Court quoted. The first and most complicated states that a "[c]laim for . . . refund . . . of any tax . . . shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed . . . within 2 years from the time the tax was paid." I.R.C. § 6511(a). By comparison, § 2401 makes just one

8

distinction, between the time period generally applicable and that applicable if an agency issues a final denial of the claim.

Second, allowing equitable tolling would not create an administrative nightmare for the FTCA regime, which encompasses far fewer claims than might be filed against the Internal Revenue Service. Thus, where the principles of equitable tolling would ordinarily apply, such tolling should be allowed in an FTCA case.

III

A useful summary of equitable tolling is offered in Irwin itself:

> We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights. . . . But the principles of equitable tolling described above do not extend to what is at best a garden variety claim of excusable neglect.

498 U.S. at 96 (footnotes omitted). Despite its generality, this passage indicates that equitable tolling is available where a plaintiff has actively pursued judicial remedies but filed a defective pleading, as long as the plaintiff has exercised due diligence.

The Supreme Court supported its discussion of equitable tolling, citing Burnett v. New York Central R.R. Co., 380 U.S. 424 (1965), as a case in which a plaintiff benefitted from equitable

9

tolling despite having filed originally in the wrong court.[1] Otto Burnett had filed his Federal Employers' Liability Act claim in the wrong county, because he was apparently unaware of a special Ohio rule specifying venue in actions against railroads. See id. at 425. The Supreme Court analyzed the text of the relevant limitations provision, which stated that "no action shall be maintained . . . unless commenced within three years . . . ." Quoted in id. at 426. Noting that "the basic inquiry is whether congressional purpose is effectuated by tolling the statute of limitations in given circumstances," id. at 427, the Court "examine[d] the purposes and policies underlying the limitations provision," id. It then emphasized that the "[p]etitioner here did not sleep on his rights but brought an action within the statutory period . . . ." Id. at 429. Finally, the Court concluded that "the limitation provision is tolled until the state court order dismissing the state action becomes final." Id. at 435.

Perez's error in this case, misunderstanding the dual nature of the Texas National Guard, is of the same magnitude as the error in Burnett. Both errors would have been uncovered through more careful legal research. Thus, if Burnett does not count as a "garden variety claim of excusable neglect," this case cannot either. What distinguishes Burnett and this case from such a

---

[1]Burnett itself never explicitly mentioned "equitable tolling," and narrowly read it is an interpretation of a legal tolling provision. Arguably, the Irwin citation folds the principle of Burnett into the doctrine of equitable tolling. Regardless of how Burnett is characterized, it remains relevant for the statutory construction it undertakes.

"garden variety" claim is that the plaintiff took some step recognized as important by the statute before the end of the limitations period. The <u>Burnett</u> action counted as "commenced" because suit was filed, even though it was the wrong action. Here too, suit was timely filed, albeit it confused the hat the National Guard was wearing at the time of the accident.

The FTCA limitations period requires only that the claim be "presented in writing to the appropriate Federal agency" before the end of the limitations period. The filing of the claim against the Texas National Guard meets this requirement. The Guard acts in different capacities, but it is one entity. The appropriate agency thus received the claim. The requirement that the claim be "presented in writing" is textually weaker than a requirement that the claim be "filed."[2] There need not be a formal legal claim filed against a properly named defendant. Indeed, the letter that Nancarrow sent would qualify as a sufficient presentment in writing within the limitations period even if the subsequent filing of a formal claim against the Texas National Guard would not.

IV

Nancarrow's letter also provides an alternative justification for equitable tolling that would suffice even if Perez's attorneys had not followed up on the letter at all. One thread of equitable tolling doctrine has recognized the appropriateness of suspending

---

[2]The inference that there is a distinction between "presented in writing" and "filed" is strengthened by analysis of the immediately preceding provision, § 2401(a), which uses the "filed" language. Presumably, if both § 2401(a) and § 2401(b) meant "filed," they both would have used the same language.

11

the statute of limitations when there has been fraudulent concealment of information that the plaintiff would need to file correctly. See generally Lyman Johnson, Securities Fraud and the Mirage of Repose, 1992 Wis. L. Rev. 607, 634-42 (discussing this strand along with another not relevant here).

While Perez cannot show intentional fraud, she can establish that the National Guard violated a duty to her. Specifically, 32 C.F.R. § 536 et seq. placed a duty on the National Guard to forward a claims form to Nancarrow or Perez after receiving his letter. Section 536.2 states, "Any person who indicates a desire to file a claim against the United States will be instructed concerning the procedure to follow. He will be furnished claim forms, and, when necessary, will be assisted in completing the forms and assembling evidence." Section 536.50(k)(2)(ii) states that claims "arising out of tortious conduct by ARNG [Army National Guard] personnel" received by the states "will be expeditiously forwarded through the State adjutant general to the appropriate U.S. Army area claims office in whose geographic area the incident occurred." Finally, § 536.50(k)(6)(iv) provides that "[w]hen a claim is improperly presented, is incomplete or otherwise does not meet the requirements . . . the claimant or his or her representative will be promptly informed in writing of the deficiencies and advised that a proper claim must be filed within the 2 year statute of limitations" (emphasis added).

The appellee argues that § 536.50 applies only to the United States Army, but not to the National Guard. This is wrong.

12

Section 536.50(k)(2) specifically refers to that set of claims "arising out of tortious conduct by ARNG personnel as defined in paragraph (d)(1)(iii) of this section," which refers directly to the relevant National Guard statutes. In addition, § 536.1(b)(iv) specifies the scope of § 536.50 as entailing "the administrative settlement of claims under the Federal Tort Claims Act . . . for personal injury, death or property damage caused by the negligent act or omissions of members or employees of the DA while acting within the scope of their employment." The "DA" is the Department of the Army, and § 536.50(d)(1)(iii) makes clear that "[m]embers of the ARNG while engaged in training or duty" are the responsibility of the DA.

Even if Nichols returned Nancarrow's phone call, the National Guard unquestionably failed to follow these regulations. The Sixth Circuit in Glarner found that the Department of Veterans Affairs had failed to comply with 38 C.F.R. § 14.604(a), which similarly requires furnishing a copy of a claim form. The court allowed equitable tolling, because "the VA failed in a legal duty to Glarner," 30 F.3d at 701.

The district court distinguished Glarner by noting that "the plaintiff in the instant case has been represented by 'able,' 'skilled' attorneys who are presumably familiar with the FTCA's statutory requirements." This is off the mark, because nothing in the regulations limits the National Guard's responsibility to cases in which the plaintiff is unrepresented. Perez clearly did not

13

sleep on her rights, and her attorneys, skilled or not, made an error.

Tolling is the only remedy for the regulatory violation, and it is a remedy that fits. Just as the negligence per se doctrine borrows statutory law in deference to the decisions of legislatures and administrative agencies, so too must equitable tolling doctrine incorporate democratically promulgated rules defining the government's obligation to prospective litigants. In this case, there is a clear causal connection between the government's failure to follow its regulations and the plaintiff's filing of an improper complaint. If there had been no causation--for example, if Perez's lawyers knew of the relevant legal rules but filed against the Texas National Guard because they thought a jury would be more sympathetic to the federal defendant--then the per se doctrine would not apply.

Fano v. O'Neill, 806 F.2d 1262 (5th Cir. 1987), does not require us to deviate from the Sixth Circuit's path. In that case, we found that the INS's failure to follow an internal agency guideline did not trigger the doctrine of equitable estoppel. Fano reminds us of the sound principle that the government cannot be estopped on the same terms as others. See id. at 1256. As we have seen, with the doctrine of equitable tolling, the presumption runs the other way. Absent evidence to the contrary, equitable tolling can be applied against the government. Moreover, Fano emphasized the distinction between internal agency guidelines and regulations passed according to notice-and-comment. See id. at 1264. When, as

14

here, we confront an exercise of legislative power, raw or delegated, our obligation to ensure that Congress's intent is fulfilled looms larger. <u>See generally</u> Robert A. Anthony, <u>"Interpretive" Rules, "Legislative" Rules and "Spurious" Rules: Lifting the Smog</u>, 8 Admin. L.J. Am. U. 1 (1994) (discussing the different legal effect of different types of rules promulgated by administrative agencies).

V

Though judges historically applied equitable tolling in their role as chancellors of equity, the doctrine is not one that trial courts have discretion to use whenever they please. Statutes of limitations serve a vital role in blocking stale claims. As the Supreme Court has made clear, some such statutes allow for equitable tolling in limited circumstances to prevent a plaintiff from unjustly losing a claim vigorously pursued. Only because the facts of this case fall within the doctrine's ambit, indeed do so in two different ways, do we find the limitations period tolled here.

REVERSED AND REMANDED.