Sarah S. JACKSON, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 01–632C.

United States Court of Federal Claims.

Jan. 10, 2003.

dures, defendant shall review the Certified Record of Assessments and Payments for errors and correct any mistakes.

**158**

Michael L. Stevens, Louisville, KY, for plaintiff.

Michael S. Dufault, Washington DC, with whom was Assistant Attorney General Robert D. McCallum, Jr., for defendant. Major Hagen W. Frank, Department of the Navy, of counsel.

### ORDER

MILLER, Judge.

Plaintiff in this case seeks retirement benefits from the military to which she was entitled by virtue of a spousal election in her favor made by her now-deceased reservist husband. The issue on defendant's motion to dismiss for lack of jurisdiction is whether she claims her benefits too late. Argument is deemed unnecessary.

### FACTS

The facts, unless otherwise noted, are undisputed, and are drawn from the complaint, defendant's motion to dismiss, and the attachments thereto. Because this motion goes to the jurisdiction of the Court of Federal Claims, the court can consider matters beyond the pleadings. *See Indium Corp. of*

---

1. Mr. Jackson's military records indicate that he completed his qualifying service on September 19, 1969, but the exact date of Mr. Jackson's retirement eligibility is immaterial to the issue raised by defendant's motion to dismiss.

*America v. Semi–Alloys, Inc.,* 781 F.2d 879, 884 (Fed.Cir.1985).

Sarah S. Jackson ("plaintiff") married Clifford T. Jackson on March 28, 1969. Mr. Jackson was born on January 26, 1926, and served as a hull technician in the U.S. Navy. On or about August 15, 1970, Mr. Jackson completed the 20 years of service necessary to become eligible for retired pay at age 60.[1] *See* 10 U.S.C. § 12731(a) (2002). On August 27, 1970, G.W. Timberlake, Chief of Naval Personnel, confirmed Mr. Jackson's eligibility for retired pay. The Navy approved Mr. Jackson's transfer to the Retired Reserve on July 14, 1975, and placed Mr. Jackson's effective transfer date at June 1, 1975, with a grade of chief hull maintenance technician.

On September 19, 1979, both Mr. Jackson and plaintiff executed a Reserve Component Survivor Benefit Plan Option–Election Certificate (the "certificate"). Congress created the Survivor Benefit Plan, 10 U.S.C. §§ 1447–1455 (2002) (the "SBP"), to provide annuity benefits to survivors of deceased servicemembers and to supplement the Retired Serviceman's Family Protection Plan (the "RSFPP").[2] *See Passaro v. United States,* 774 F.2d 456, 457 (Fed.Cir.1985). SBP enrollment is restricted to servicemembers eligible for retired pay and those "who would be eligible for reserve-component retired pay but for the fact that they are under 60 years of age." 10 U.S.C. §§ 1448(a)(1)(A), (B). The servicemember must also be married or have a dependant child when he or she becomes eligible for retired pay. 10 U.S.C. §§ 1448(a)(2)(A), (B).

The certificate indicates an election that SBP coverage was to begin on the later of Mr. Jackson's 60th birthday or the day after his death. Annuity payments under the SBP were to be based on the full amount of Mr. Jackson's retired pay, and plaintiff was the sole beneficiary. Mr. Jackson signed the certificate in the box labeled "Signature of Retiree," and plaintiff's signature appears

---

2. The RSFPP had proved inadequate as a source of retirement benefits, as it was invoked by only 15% of eligible military personnel. *Passaro,* 774 F.2d at 457.

under the heading "Spouse." Elmer L. Given, a notary public, witnessed the signatures.

Mr. Jackson died on July 8, 1981, approximately four and one-half years before his 60th birthday. On January 2, 1996, almost 15 years after Mr. Jackson's death, the Director of the Retired Personnel Services Division notified plaintiff by letter that she was eligible for SBP benefits. The letter informed plaintiff that she must complete an enclosed application form and that her first annuity payment would consist of a lump sum covering the prior six years. After the first payment, plaintiff would receive a monthly annuity based on a portion of her husband's retired pay.

Plaintiff filled out the form, but omitted certain information, delaying completion of the application until June 8, 1996. On July 8, 1996, the Navy notified plaintiff that her application had been forwarded to the Defense Finance and Accounting Service. Plaintiff claims that she was first promised retirement benefits without limitation, but that the Navy subsequently informed her that she was eligible for benefits for only the six years prior to her application. Regardless, plaintiff eventually was informed that she qualified for no benefits under the SBP. Plaintiff filed a complaint in this court seeking $100,000.00, presumably representing unpaid benefits, plus costs and interest, on November 8, 2001.

## DISCUSSION

### 1. Standard for dismissal on jurisdictional grounds under RCFC 12(b)(1)

Defendant moves to dismiss plaintiff's complaint under RCFC 12(b)(1) for lack of subject matter jurisdiction. The burden of establishing the court's subject matter jurisdiction rests with the party seeking to invoke it. See Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369 (Fed.Cir.2002). When a federal court hears such a jurisdictional challenge, "its task is necessarily a limited one." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Id. The court must accept as true the facts alleged in the complaint, see Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed.Cir.1988), and must construe such facts in the light most favorable to the pleader. See Henke v. United States, 60 F.3d 795, 797 (Fed.Cir. 1995) (holding courts obligated "to draw all reasonable inferences in plaintiff's favor"). The court may consider all relevant evidence, including evidentiary matters outside the pleadings, when resolving a jurisdictional challenge. See Indium Corp., 781 F.2d at 884; Alexander v. United States, 52 Fed.Cl. 710, 712 (2002).

### 2. Six-year limitations period under 28 U.S.C. § 2501

Defendant maintains that plaintiff's claim is barred by 28 U.S.C. § 2501 (2002), which requires that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." Defendant marks January 26, 1992, as the date by which plaintiff was required to file her complaint. Plaintiff seeks to avoid the limitations bar by alleging that the Navy failed to notify her that she was eligible to receive benefits under the SBP as a result of Mr. Jackson's military service, as required by 10 U.S.C. §§ 1448 and 1455.

The Federal Circuit has held that the six-year statute of limitations is an "express limitation on the Tucker Act's waiver of sovereign immunity." Hart v. United States, 910 F.2d 815, 817 (Fed.Cir.1990) (cited with approval in Brown Park Estates–Fairfield Dev. Co. v. United States, 127 F.3d 1449, 1454 (Fed.Cir.1997)). "In that regard, we have stated that section 2501 'is a jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity and, as such, must be strictly construed.'" Brown Park Estates–Fairfield, 127 F.3d at 1454 (quoting Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1576–77 (Fed.Cir.1988)); see also Library of Congress v. Shaw, 478 U.S. 310, 318, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986) (holding that statutes waiving sovereign im-

munity must be strictly construed). The Supreme Court has mandated that "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in the statutory text .... Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996) (citations omitted).

Because her husband died before his 60th birthday, plaintiff became entitled to SBP benefits on the 60th anniversary of his birth. A cause of action for those benefits arose on that date. *See Kinsey v. United States,* 852 F.2d 556, 557 (Fed.Cir.1988) (noting that claim against Government accrues "when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action"). Mr. Jackson would have reached 60 on January 26, 1986, and plaintiff filed her claim on November 8, 2001. Plaintiff's claim therefore falls well outside the six-year limitations period in 28 U.S.C. § 2501.

Plaintiff does not argue that she filed her claim within the required six-year period. Rather, she purports to rely on "equitable tolling and her lack of knowledge of her potential claim" in order to circumvent the jurisdictional obstacle presented by 28 U.S.C. § 2501.[3] Pl.'s Br. filed Nov. 8, 2002, at 4. Defendant vigorously denies that equitable tolling could apply in the circumstances of this case.

### 3. *Equitable tolling*

The Supreme Court has recognized equitable tolling as appropriate in claims against the Government in certain limited situations:

> Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked

by his adversary's misconduct into allowing the filing deadline to pass.

*Irwin v. Dept. of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990).

▮ Thus, a claimant may receive the benefit of equitable tolling when he has actively pursued his rights during the limitations period. *See Perez v. United States,* 167 F.3d 913, 918 (5th Cir.1999). The claimant also may plead equitable estoppel in cases where he could not have known of his legal rights during the time frame set by the applicable statute of limitations. *See Japanese War Notes Claimants Ass'n v. United States,* 178 Ct.Cl. 630, 634, 373 F.2d 356, 359 (1967) (equitable tolling appropriate when "defendant has concealed its acts with the result that plaintiff['s] ... injury was inherently unknowable at the accrual date"); *Catawba Indian Tribe of South Carolina v. United States,* 982 F.2d 1564, 1572 (Fed.Cir. 1993) (tolling allowed when "under the circumstances plaintiff did not and could not have known of the *facts* upon which the claim is based").

▮ However, as "a judicial interpretation of ... legislative enactment[s], the rule [allowing equitable tolling] is strictly and narrowly applied." *Welcker v. United States,* 752 F.2d 1577, 1580 (Fed.Cir.1985). "Ignorance of rights which should be known is not enough" to trigger the doctrine. *Japanese War Notes,* 178 Ct.Cl. at 634, 373 F.2d at 359. Neither does it "extend to what is at best a garden variety claim of excusable neglect," or to situations where "the claimant failed to exercise due diligence in preserving his legal rights." *Irwin,* 498 U.S. at 96, 111 S.Ct. 453. Implementation of the doctrine is also a question of legislative intent, as statutory language may evince a congressional desire to prevent judicial circumvention of statutory confines. *See United States v. Brockamp,* 519 U.S. 347, 352, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997) (Supreme Court refused to apply equitable tolling to provision of Internal Revenue Code in part because of detailed language of statute); *see also Unit-*

---

**3.** Plaintiff also states that she does not base her entitlement claim on the "continuing claims doctrine," so that legal principle will not inform the court's analysis. Pl.'s Br. filed Nov. 8, 2002, at

4; *see also Brown Park Estates–Fairfield,* 127 F.3d at 1456 ("[A] claim based upon a single distinct event, which may have continued ill effects later on, is not a continuing claim.").

ed States v. Johnson, 529 U.S. 53, 58, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000) ("When Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference ... is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth.").

Rather than characterizing equitable tolling as applicable only in a limited number of circumstances, plaintiff instead boldly states that "Federal Courts have applied equitable tolling against the government in many decisions following Irwin." Pl.'s Br. filed Nov. 8, 2002, at 5. However, the four cases plaintiff cites support the proposition that equitable tolling provides relief only in limited circumstances.

The Federal Circuit, in deciding Welcker, a case involving 28 U.S.C. § 2501, stated that "the statute of limitations is tolled only so long as the plaintiff is unaware of the wrong committed." 752 F.2d at 1580. Because plaintiff in that case filed his back pay claim more than six years after he was on notice that his termination from the Air Force may have been wrongful, he could not invoke equitable tolling. See id. In Perez the Fifth Circuit tolled the limitations period for filing claims under the Federal Tort Claims Act. See 167 F.3d at 919. However, the court noted that its decision hinged on the fact that equitable tolling is appropriate when plaintiff "has exercised due diligence" in pursuing his legal rights. Id. at 917. Because plaintiff in Perez attempted, within the limitations period, to vindicate her tort claim through judicial channels, employing equitable tolling was justifiable.

Perez illuminates the deficiency of plaintiff's third case, Schmidt v. United States, 933 F.2d 639 (8th Cir.1991). The Schmidt court, soon after the Supreme Court's holding in Irwin, reversed a grant of a motion to dismiss. See 933 F.2d at 640. The Schmidt court's reasoning bespeaks a belief that "the Irwin rule allowing equitable tolling would apply in all suits against the government." Perez, 167 F.3d at 916. Because Brockamp, issued after Schmidt, dispelled this reading,

the Perez court deemed the Schmidt court's reasoning "flawed" and decided its case without considering the impact of Schmidt. Id.

The final case cited by plaintiff, Hohri v. United States, 782 F.2d 227 (D.C.Cir.1986), was vacated by the Supreme Court and remanded to the Federal Circuit for jurisdictional reasons. See United States v. Hohri, 482 U.S. 64, 75–76, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987). The D.C. Circuit, when analyzing plaintiff's takings claim, had equitably tolled 28 U.S.C. § 2401 (2002), a statute of limitations for the majority of claims brought against the Government. See 782 F.2d at 252. On remand, the Federal Circuit disagreed that equitable tolling was appropriate and upheld the dismissal of plaintiff's claim as time-barred. See Hohri v. United States, 847 F.2d 779, 779 (Fed.Cir.1988).

■ As plaintiff presents no case law that supports a broad application of equitable tolling, plaintiff must show that she actively pursued her rights during the limitations period or that she was excusably unaware of her entitlement to SBP benefits. See Irwin, 498 U.S. at 96, 111 S.Ct. 453. Plaintiff attempts to establish her lack of knowledge in several ways. First, plaintiff charges that the Navy, in contravention of 10 U.S.C. §§ 1448 and 1455, failed to notify and counsel her regarding the consequences of the election made in the SBP certificate. Plaintiff's contention has no merit, as neither of these provisions obligates the military to notify or counsel beneficiaries who are to receive benefits such as those elected by her husband. 10 U.S.C. § 1448(a)(6)(D) requires the appropriate military branch to notify a servicemember's spouse if the member elects to 1) opt-out of the SBP entirely, 2) provide a spousal annuity at less than the maximum level, or 3) select an annuity for a dependant child but not the spouse.[4] The SBP certificate states that plaintiff was the sole beneficiary of the annuity and that it would be based on the maximum level of Mr. Jackson's retired pay. This type of election does not implicate the notice requirement of section 1448(a)(6)(D).

---

4. At the time Mr. Jackson and plaintiff executed the SBP certificate, the SBP required spousal notification in the same three scenarios. See 10 U.S.C. § 1448(a)(3)(B) (Supp. IV 1976).

Plaintiff makes no attempt to specify which provision of 10 U.S.C. § 1455 purportedly placed a duty on the Navy to notify her of her eligibility for SBP benefits. Section 1455(b)(1) requires regulations which provide, *inter alia*, that an eligible servicemember and his or her spouse, before the member becomes entitled to retired pay, be notified of the elections possible under the SBP.[5] However, no mention is made in section 1455 of a duty to notify the spouse of a deceased servicemember, who jointly executed an SBP certificate before her husband's death, of her entitlement to receive an SBP annuity. Neither section 1448 nor section 1455 provides a basis for equitably tolling the six-year limitations period.

Second, plaintiff claims that she had no actual or constructive knowledge "regarding the nature, extent, or even existence" of her rights and benefits under the SBP, Pl.'s Br. filed Nov. 8, 2002, at 2, and that this ignorance is excusable because of her employment as a secretary and a notary public. Plaintiff, in her notary capacity, "was often requested to observe and witness people's signatures on various documents," but "was not required to read and understand the contents of the documents, but merely attest that the person signing the document was who he declared to be." *Id.* at 7. Accordingly, plaintiff asserts that, even though she executed the SBP certificate, she had no knowledge of its contents until she received the application for benefits in 1996.

Plaintiff's opposition brief represents that these averments appear in an affidavit appended thereto. She contends that an affidavit rebuts any "presumption of notice in this case" and that her signature on the SBP certificate "does not automatically imply her knowledge [of] the [certificate's] contents." *Id.* at 7–8.

Although the court is sympathetic to plaintiff's situation, these arguments cannot toll the statute of limitations beyond the six-year period. As an initial matter, the affidavit allegedly completed by plaintiff was not filed with the court. Even crediting as true all representations made in plaintiff's brief and in the complaint, the court is limited to the portions of the missing affidavit cited in plaintiff's submissions.

Plaintiff cites *McCarthy v. United States,* 10 Cl.Ct. 573 (1986), to support the proposition that an affidavit rebuts a presumption that the military notified a beneficiary of her rights under the SBP. Plaintiff's husband in *McCarthy* elected not to participate in the SBP, thus triggering the statutory requirement that his spouse be notified of his selection. Plaintiff contended, in a sworn affidavit, that she was not notified by the Air Force of her husband's selection, and the court found that her affidavit was sufficient to defeat any presumption that notice was given. *See* 10 Cl.Ct. at 578. In the case at bar, the Navy was under no statutory duty to notify plaintiff of her right to receive SBP benefits on the 60th anniversary of her husband's birth. There is no presumption of notice for plaintiff to defeat, as the Navy had no duty to contact a beneficiary in plaintiff's situation.

Plaintiff also relies on *McFarlane v. Secretary of Air Force,* 867 F.Supp. 405 (E.D.Va. 1994), to support the argument that her signature does not signify knowledge of the contents of the SBP certificate. Plaintiff's husband in *McFarlane* elected to decrease the portion of his retired pay upon which the SBP annuity would be based, yet plaintiff, in contravention of the SBP's notice requirements, was not notified of this reduction. When plaintiff discovered her husband's election after his death, she applied to a correction board to have the reduction reversed. The board reasoned that plaintiff should have been aware of her husband's election because she witnessed his signature on the election certificate and rejected plaintiff's request as untimely.[6]

---

5. The version of section 1455 in effect when plaintiff and her husband signed the certificate called for the same regulations. *See* 10 U.S.C. § 1455(1) (1976).

6. Under the version of the SBP in effect during the relevant period in *McFarlane,* a reduction in contributions toward an annuity did not require spousal consent, but still required spousal notification. *See* 867 F.Supp. at 408 n. 1.

The district court, in remanding the case back to the board, focused on the fact that plaintiff served as a witness to her husband's signature. A witness, according to the legal definition of the term "need not read the document nor familiarize himself with its contents or subject matter," 867 F.Supp. at 412, as a witness's function is to verify the identity of the person signing the document. Accordingly, plaintiff's ignorance of her husband's election was found to be excusable. *See id.* In contrast, plaintiff in the instant case did not sign the certificate as a witness, despite her protestations that she usually served in that role. Her signature appeared under the heading "Spouse," and Mr. Given served as the witness for both plaintiff's and her husband's signatures. Plaintiff has given the court no reason to ignore the well-settled presumption that " 'a person's signature on a written instrument normally indicates assent to the terms of that document.' " *Alaska American Lumber Co., Inc. v. United States,* 25 Cl.Ct. 518, 529 (1992) (quoting *Carpenter v. United States,* 4 Cl.Ct. 705, 714 (1984)).[7]

Third, plaintiff makes repeated references to the fact that the Navy did not inform her of her right to apply for SBP benefits until January 2, 1996, almost 15 years after her husband's death, leaving her unaware of her eligibility for benefits until the statute of limitations had expired. While defendant is unable to explain why the Navy sent the benefit application to plaintiff in 1996, the Navy's letter cannot serve as a basis for equitable tolling. In *Hart* the Federal Circuit noted that a qualifying member of the military automatically is enrolled in the SBP. Therefore, all that is required to trigger the surviving spouse's right to benefits is an event fixing the Government's liability. The triggering event in *Hart* was the death of the servicemember. In this case, in accordance with the certificate, the trigger was the 60th anniversary of Mr. Jackson's birth, as he died before his 60th birthday. Absent a statutory duty commanding more, notice from the military regarding eligibility for benefits does not affect the surviving spouse's entitlement to them, nor does it trigger the running of a statute of limitations. The *Hart* court determined that "on the day after Sergeant Hart's death, all events fixing the Government's liability to his widow had occurred,"and dismissed the surviving spouse's claim as time-barred. 910 F.2d at 818. Plaintiff's claim was fixed on January 26, 1986, on what would have been her husband's 60th birthday, and the Navy's 1996 letter provides her no justification for equitable tolling.

## CONCLUSION

The court empathizes with plaintiff's desire to receive the SBP benefits, but plaintiff has failed to present any allegation that could toll the six-year limitations period of 28 U.S.C. § 2501. The Navy was under no statutory duty to notify plaintiff either that she was eligible to receive SBP benefits or that she should apply for the benefits, and her signature on the SBP certificate charges her with knowledge of the contents contained therein. Although the Navy incorrectly informed plaintiff that she could apply for the benefits, the Navy corrected its mistake, which, in any event, would not have waived the statute or avoided the limitations period. Given the limited scope of the doctrine of equitable tolling and the fact that plaintiff's ignorance of her rights cannot serve as a basis for employing the doctrine, the court concludes that plaintiff is not entitled to equitable relief. Because plaintiff filed her claim after the six-year statute of limitations expired, the court has no jurisdiction to hear it. Accordingly,

Defendant's Motion to Dismiss is granted, and the Clerk of the Court shall dismiss the complaint without prejudice for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

No costs.

---

7. The court also cannot use plaintiff's exposition on the cultural differences between reserve duty and active duty as a basis for equitable tolling. While the court appreciates the differences between the two types of service, these dissimilarities do not justify plaintiff's ignorance of her legal rights. *See Japanese War Notes,* 178 Ct.Cl. at 634, 373 F.2d at 359.