TASHIMA, Circuit Judge,
joined by BEA, Circuit Judge,
dissenting:
I join Judge Bea’s dissenting opinion in full. I write separately to clarify the Federal Tort Claims Act’s (“FTCA’s”) legislative history. This history, once understood in full context, dispels any doubt that the FTCA’s limitations provision was intended to be jurisdictional.
I.
Two provisions of the FTCA are central for present purposes — the limitations provision, currently codified at 28 U.S.C. § 2401(b), and the jurisdiction-granting provision, currently codified at 28 U.S.C. § 1346(b). I begin with a brief history of these two provisions.
The FTCA was originally enacted in 1946 as Title IV of the Legislative Reorganization Act. See Pub.L. No. 79-601 (“1946 Act”), tit. IV, 60 Stat. 812, 842-47 (1946). Pursuant to the 1946 Act, the provisions of the FTCA were codified in Chapter 20 of Title 28. See 28 U.S.C. §§ 921-946 (1946). Among these provisions was the jurisdiction-granting provision, which read, in pertinent part:
*1056 Subject to the provisions of this chapter, the United States district court for the district wherein the plaintiff is resident or wherein the act or omission complained of occurred, including the United States district courts for the Territories and possessions of the United States, sitting without a jury, shall have exclusive jurisdiction to hear, determine, and render judgment on any claim against the United States, for money only, accruing on and after January 1, 1945, on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant for such damage, loss, injury, or death in accordance with the law of the place where the act or omission occurred.
Id. § 931(a) (emphasis added). The FTCA thus conferred exclusive federal jurisdiction over tort actions against the United States, but “[sjubject to the provisions of’ Chapter 20. Included within Chapter 20 was the FTCA’s limitations provision, then-codified at 28 U.S.C. § 942. See id. § 942. Accordingly, as originally enacted in the 1946 Act, the FTCA’s grant of jurisdiction was “[sjubject to” the limitations provision.
Congress recodified and reorganized Title 28 in 1948. See Pub.L. 80-773 (“1948 Act”), § 1, 62 Stat. 869 (1948). As part of the recodification, most of the provisions formerly grouped under Chapter 20 were regrouped under Chapter 171. See id. at 982-85. The limitations provision, however, was removed from this grouping and placed in its current location in Chapter 161, at 28 U.S.C. § 2401(b). See id. at 970-71. There, it was situated alongside 28 U.S.C. § 2401(a), which provides for a six-year statute of limitations in other types of civil actions against the United States. See id. at 971.
Also removed from the former Chapter 20 grouping was the jurisdiction-granting provision, which was recodified in Chapter 85, at 28 U.S.C. § 1346(b). See id. at 930, 933. Similarly to the limitations provision, this move consolidated the jurisdiction-granting provision with the other provisions of Title 28 granting jurisdiction in civil actions against the United' States. See id. at 933. Because the reference to “this chapter” in the opening clause of § 1346(b) was now stale — given that § 1346(b) was no longer in the same chapter as the other FTCA provisions — the clause was changed to read, “Subject to the provisions of chapter 173 of this title.” Id.
However, there was no Chapter 173 of Title 28. Rather, this was a scrivener’s error that should have read Chapter 171. Throughout the drafting history of the 1948 Act, the chapter that would become Chapter 171 — titled “Tort Claims Procedure” — had been designated Chapter 173, with the cross-reference in § 1346(b) corresponding to this designation. See, e.g., H.R. 2055, 80th Cong., chs. 85, 173 (1947). When the chapter was renumbered to 171 via a late Senate amendment, see S.Rep. No. 80-1559, at 8 (1948), the drafters simply failed to update the cross-reference in § 1346(b). It is thus evident that, as of the 1948 Act, the opening clause of § 1346(b) should have read, “Subject to the provisions of chapter 171 of this title.” Indeed, a year later, Congress amended § 1346(b) to correct this error and change the cross-reference to Chapter 171. See Pub.L. 81-55, 63 Stat. 62 (1949); see also S.Rep. No. 81-135, at 1-2 (1949).
II.
The history of the limitations and jurisdiction-granting provisions, as recounted *1057 above, taken in conjunction with the considerations discussed below, offer “a clear indication that Congress wanted the [limitations] rule to be jurisdictional.” Henderson ex. rel. Henderson v. Shinseki, — U.S. -, 131 S.Ct. 1197, 1203, 179 L.Ed.2d 159 (2011) (internal quotation marks omitted). First, and most importantly, it is plain that the limitations provision was jurisdictional as of the original 1946 Act, for the grant of jurisdiction was expressly “[sjubject to” — that is, “contingent or conditional upon” — compliance with that provision. See Webster’s New World Dictionary 1333 (3d Coll. ed.1994); see also Webster’s New International Dictionary 2509 (2d ed.1940) (defining “subject to” as “[b]eing under the contingency of; dependent upon or exposed to (some contingent action)”). It is difficult to imagine a more “clear statement” as to Congress’ intent.[1] See Sebelius v. Auburn Reg’l Med. Ctr., — U.S. -, 133 S.Ct. 817, 824, 184 L.Ed.2d 627 (2013).
If one accepts this proposition — which the majority only obliquely disputes[2]— then, in order to find § 2401(b) non-jurisdictional, one must conclude that Congress intended to strip the limitations provision of its jurisdictional status only two years later, through the 1948 Act. Under long-established Supreme Court precedent, however, we are not to “presume that the 1948 revision worked a change in the underlying substantive law unless an intent to make such a change is clearly expressed.” John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 136, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008) (internal quotation marks omitted); see also Keene Corp. v. United States, 508 U.S. 200, 209, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) (citing cases applying this rule). Here, not only is such “clearly expressed” intent lacking, but there is an abundance of evidence to the contrary — that Congress had no desire to alter the jurisdictional status of the limitations provision.
In the Reviser’s Notes to the 1948 Act,[3] Congress explained that § 2401 “consolidates” the FTCA’s limitations provision with the six-year limitations period of 28 U.S.C. § 2401(a), which, like § 2401(b), had formerly been codified elsewhere in Title 28. See H.R. Rep. 80-308, at A185 (1947); see also 28 U.S.C. § 41(20) (1946) (former section of six-year limitations period). This purely organizational function— *1058 to consolidate the provisions of Title 28 setting forth limitations periods in actions against the government — is the obvious reason that Congress separated § 2401(b) from the other FTCA provisions and placed it in chapter 161.[4] If there were any doubt as to whether a substantive purpose was intended, the Reviser’s Notes then added, “Subsection (b) of the revised section [2401] simplifies and restates [former 28 U.S.C. § 942], without change of substance.” H.R. Rep. 80-308, at A185 (emphasis added).
Congress provided equally definitive guidance in the actual text of the 1948 Act. In an uncodified provision, Congress instructed, “No inference of a legislative construction is to be drawn by reason of the chapter in Title 28 ... in which any [] section is placed.” 1948 Act, § 33, 62 Stat. at 991 (emphasis added). Of course, precisely such an inference is required to find § 2401(b) non-jurisdictional, because one must assume that Congress intended to alter the jurisdictional status of the limitations provision by removing it from the FTCA Chapter and placing it in Chapter 161.
In short, there is no indication — let alone a “clearly expressed” indication— that Congress intended to alter the jurisdictional status of the limitations provision through the 1948 Act.
III.
The majority offers several responses to this historical evidence, none of which is persuasive. First, the majority contends that “it is improper to consider legislative history” because the statutory text is “plain.” Maj. Op. at 1042. It is a curious statute that is unambiguous but manages to produce an intracircuit split, several en banc dissents, and dozens of pages of analysis by the majority to justify its conclusion. These considerations aside, the fact is that the goal of the jurisdictional inquiry is “to ascertain Congress’ intent.” Henderson, 131 S.Ct. at 1204. The majority recognizes that we must look to factors such as “context” and “relevant historical treatment” to discern this intent, Maj. Op. at 1036 (quoting Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 130 S.Ct. 1237, 1246, 176 L.Ed.2d 18 (2010)), but it provides no reason why legislative history may not similarly be considered.[5] The majority, in effect, invokes the requirement that there be evidence of clear congressional intent, and it then seeks to shut the door on the very evidence that could support this showing.
Perhaps recognizing that its “plain text” argument sits on shaky ground, next, the majority implicitly acknowledges that the limitations provision was jurisdictional under the original 1946 Act, but it contends that the 1948 revision undid this status. Maj. Op. at 1043-44. In this regard, the majority does at least make a passing reference to the rule that we are not to presume the 1948 Act effected substantive change unless “clearly expressed.” Maj. Op. at 1044. According to the majority, though, such clear expression can be found in Congress’ amending the cross-reference *1059 in § 1346(b) to Chapter 171, which did not include the limitations provision. Maj. Op. at 1044.
This argument quickly falls apart upon considering the history of the two key provisions. As explained, the removal of the limitations provision from the FTCA Chapter was solely for organizational purposes, to consolidate the provisions of Title 28 setting forth limitations periods in actions against the government. Likewise, the redesignation of the cross-reference in § 1346(b), to Chapter 171, was merely an artifact of reorganization. The jurisdiction granting provision previously referenced “this chapter” — referring to the FTCA Chapter of Title 28 — but this reference became outdated once the jurisdiction-granting provision was stripped out of the FTCA Chapter. Congress simply updated the cross-reference, inserting the new number of the FTCA Chapter, Chapter 171. In the end, therefore, the majority’s argument is entirely circular. The majority relies on the reorganization, and nothing else, as a clear expression that the reorganization effected substantive change.[6]
Finally, the majority falls back on the notion that the FTCA’s “drafting history” cannot supply a clear statement of Congress’ intent. Maj. Op. at 1044. The 1946 Act, however, does not reflect “drafting history.” It is the statutory scheme as enacted by Congress. And it is the scheme put into place only two years prior to the revisions that produced the current statutory language, revisions that we are to presume did not effect any substantive change. Under these circumstances, it is entirely reasonable to rely on the 1946 Act as providing a “clear indication” of Congress’ intent. Henderson, 131 S.Ct. at 1205.
IV.
Given the legislative history recited above, I have little difficulty concluding that the FTCA’s limitations provision was intended to be jurisdictional. Congress provided a clear statement to this effect when enacting the provision in 1946. When reorganizing Title 28 only two years later, Congress did not “clearly express! ],” or provide any indication at all, that it intended to disturb this status. For these reasons, as well as the reasons outlined in Judge Bea’s dissenting opinion, I respectfully dissent.
BEA, Circuit Judge,
with whom TASHIMA, Circuit Judge, joins,
dissenting:
The majority opinion permits courts, for equitable reasons, to extend the time in which a tort action can be begun against the Government, after the obligatory administrative claim has been filed and denied. Because I believe Congress clearly expressed its intent that 28 U.S.C. § 2401(b) would limit the jurisdiction of federal courts by providing that tort claims “shall be forever barred” unless action is begun within the six-month period following denial of the administrative claim by *1060 the concerned agency, with no exceptions, I respectfully dissent.
I. The “Jurisdictional” vs. “Claim-Processing” Distinction and Our Inquiry
The majority is correct, of course, in noting that the Supreme Court has created a rebuttable presumption that equitable tolling applies to suits against the United States. See Irwin v. Dep’t of Veterans Affairs, 498 U.S. 89, 95-96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990).[1] But that presumption is not universally applicable. As the majority admits, it has no application to certain kinds of “more absolute” statutes of limitations. See John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133-34, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008).[2] These “more absolute” statutes “seek not so much to protect a defendant’s case-specific interest in timeliness as to achieve a broader system-related goal, such as facilitating the administration of claims, limiting the scope of a governmental waiver of sovereign immunity, or promoting judicial efficiency.” Id. at 133, 128 S.Ct. 750. The Court has described the time limits in such statutes of limitations as “jurisdictional.” See id. at 134, 128 S.Ct. 750.
The majority believes the distinction between these “more absolute” or “jurisdictional” statutes, to which courts cannot create exceptions based on equitable considerations, and mere “claim-processing rules,” to which Irwin’s rebuttable pre *1061 sumption applies, is “critical for present purposes.” See Op. at 1034-35. The majority calls § 2401(b) a “quintessential claim-processing rule,” see Op. at 1039, but calling something a name does not change its nature.[3] And the critical question is not whether we characterize § 2401(b) as a “quintessential claim-processing rule,” see Op. at 1039, but whether Congress mandated that its prescribed time limit be jurisdictional, see Henderson v. Shinseki, — U.S. -, 131 S.Ct. 1197, 1203, 179 L.Ed.2d 159 (2011) (noting that “Congress is free to attach the conditions that go with the jurisdictional label to a rule that [courts] would prefer to call a claim-processing rule.”).[4] To make this determination, the court must “look to see if there is any clear indication that Congress wanted the rule to be jurisdictional.” Id. (internal quotation marks and citation omitted). And, to find such a “clear indication,” we must examine the statute’s “text, context and relevant historical treatment.” Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 166, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010).[5]
II. The Statute’s Text
Section 2401(b) provides, in relevant part, that “[a] tort claim against the United States shall be forever barred unless ... action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.” 28 U.S.C. § 2401(b).
A. Reading § 2401(b) with § 2675.
Perhaps where the majority goes wrong is in considering § 2401(b) as a stand-alone statute of limitations, rather than considering it in conjunction with the complementary administrative exhaustion requirement of 28 U.S.C. § 2675. The Court has instructed against such a restrictive view *1062 of statutory conditions for bringing suit. See United States v. Dalm, 494 U.S. 596, 601, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990).[6] Instead, courts should read together “provisions which qualify an [individual]’s right to bring ... suit upon compliance with certain conditions.” Id.[7] Here, two statutory provisions qualify an individual’s right to file suit for tort against the United States. See 28 U.S.C. § 2675(a); 28 U.S.C. § 2401(b). First, § 2675 provides that “[a]n action shall not be instituted upon a claim against the United States for money damages ..., unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.” 28 U.S.C. § 2675(a). This section requires that an administrative claim be made to the responsible agency, and it disallows suit until the denial of such claim is final. See id. No such administrative claims filing is needed to commence an action against a private person under applicable state law. Irwin, 498 U.S. at 96, 111 S.Ct. 453 (reasoning that principles “applicable to suits against private defendants should also apply to suits against the United States”).
Section 2401(b) is § 2675(a)’s logical complement. It provides that:
[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after *1063 such claim accrues or unless action is begun within six months alter the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.
28 U.S.C. § 2401(b). This provision establishes the time limits applicable to presenting an administrative claim and beginning a civil action. As in Dalm, the import of these two sections is clear when they are read together: Unless an administrative claim is presented to the responsible agency before action is begun, and unless both the claim and the action are begun within the time limits imposed by § 2401(b), the tort claim against the United States “shall be forever barred.”
B. Section 2401(b) Refers to Courts’ Jurisdiction.
The majority holds, in a rather conclusory fashion, that § 2401(b) “does not speak in jurisdictional terms or refer in any way to the jurisdiction of the federal courts.” Op. at 1038 (internal quotations and citations omitted). I disagree. While it is true that § 2401(b) does not mention the term “jurisdiction,” the same is true of several statutes of limitations the Court has found to be jurisdictional. See John R. Sand & Gravel, 552 U.S. at 134, 128 S.Ct. 750 (holding 28 U.S.C. § 2501 juris(fictional, despite the absence of the term “jurisdiction”); Bowles v. Russell, 551 U.S. 205, 213, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007) (same with respect to 28 U.S.C. § 2107(a) and (c))[8]; Dalm, 494 U.S. at 609, 110 S.Ct. 1361 (same with respect to 26 U.S.C. § 7422(a) and 26 U.S.C. § 6511(a)).[9] The majority fails to appreciate a crucial difference between the statutes of limitations the Court has deemed jurisdictional and those to which the Court has applied equitable tolling: whether the statute expressly mandates a consequence for the failure timely to file.
1. Plain Statutes of Limitations: No Consequences Mandated for Failure Timely to File
Some statutes of limitations require that certain actions be performed within a specified period of time without specifying consequences to be applied where the actions are not performed as prescribed. See, e.g., 17 U.S.C. § 411(a) (“[Subject to certain exceptions], no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.”); 28 U.S.C. § 2244(d)(1) (“A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in *1064 custody pursuant to the judgment of a State court.”); 38 U.S.C. § 7266(a) (“In order to obtain review by the Court of Appeals for Veterans Claims of a final decision of the Board of Veterans’ Appeals, a person adversely affected by such decision shall file a notice of appeal with the Court within 120 days after the date on which notice of the decision is mailed....”); F.R. BankrJP. 4004(a) (“[A] complaint ... objecting to the debtor’s discharge shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a).”). These statutes, as evidenced by the quotations above, are often written in mandatory terms. Significantly, while they make parties’ actions mandatory, they do not contain mandatory consequences for noncompliance.
The Court has instructed that “if a statute does not specify a consequence for
noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction.” Barnhart v. Peabody Coal Co., 537 U.S. 149, 159, 123 S.Ct. 748, 154 L.Ed.2d 653 (2003).[10] It makes good sense, then, that the Court has regularly held that statutes of limitations lacking provisions specifying consequences do not speak in jurisdictional terms or refer to the courts’ jurisdiction. See, e.g., Henderson, 131 S.Ct. at 1204 (holding that the terms of 38 U.S.C. § 7266(a) “do not suggest, let alone provide clear evidence, that the provision was meant to carry jurisdictional consequences”); Holland v. Florida, 560 U.S. 631, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010) (holding that 28 U.S.C. § 2244(d)(1) “does not set forth an inflexible rule requiring dismissal whenever its clock has run” (internal quotation marks and citations omitted))[11]; Reed El *1065 sevier, 559 U.S. at 165, 130 S.Ct. 1237 (holding that 17 U.S.C. § 411(a) “does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts” (citation omitted)); Kontrick v. Ryan, 540 U.S. 443, 454, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004) (holding that “the filing deadline[ ] prescribed in Bankruptcy Rule[ ] 4004 ... do[es] not delineate what cases bankruptcy courts are competent to adjudicate”).[12] These cases stand for the general proposition identified above: If the statutory text does not mandate dismissal as the consequence for noncompliance, the courts should not read the statute as having jurisdictional consequences (i.e. mandatory dismissal without exception). Instead, per Irwin’s instruction, the courts should presume equitable tolling may be applied to the statute in question, and then proceed to determine whether that presumption has been rebutted and, if not, whether the running of the timing provision should be tolled for equitable reasons. See Irwin, 498 U.S. at 95-97, 111 S.Ct. 453.[13]
2. Consequence Statutes of Limitations: Mandatory Consequences for a Failure Timely to File
In contrast, however, are statutes of limitations that specify the consequences of a party’s failure to adhere to a prescribed time limit. See, e.g., 26 U.S.C. § 7422(a) (“No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax ... until a claim for refund or credit has been duly filed with the Secretary....”); 28 U.S.C. § 2501 (“Every claim of which the United States *1066 Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.”); 28 U.S.C. § 2107(a) (“Except as otherwise provided in this section, no appeal shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days after the entry of such judgment, order or decree.”); 28 U.S.C. § 2409a(g) (“Any civil action under this section, except for an action brought by a State, shall be barred unless it is commenced within twelve years of the date upon which it accrued.”). Like the first category of statutes discussed swpra, these statutes speak in mandatory terms. They do not, however, merely require that parties take actions at specified times. Instead, these statutes require the courts to respond in a certain way to a party’s failure to timely act by making the consequences of noncompliance, rather than just the acts, mandatory.
It is clear, then, that there are two different kinds of mandatory provisions: (1) those that make certain actions mandatory on the parties but do not specify the consequences of noncompliance, and (2) those that also provide mandatory consequences for failures to act according to their prescriptions. The Court has mentioned the importance of this distinction in the past. See Henderson, 131 S.Ct. at 1204 (holding a statute nonjurisdictional in part because its language did “not suggest, let alone provide clear evidence, that the provision was meant to carry jurisdictional consequences”); Holland, 130 S.Ct. at 2560 (noting that the nonjurisdictional statute did “not set forth an inflexible rule requiring dismissal whenever its clock has run” (internal quotation marks and citations omitted)). I agree with the majority that not all mandatory prescriptions are properly categorized as jurisdictional. See Op. at 1039. But I also believe that, to determine which mandatory prescriptions are jurisdictional, we must pay close attention to precisely what Congress has made mandatory (i.e. a party’s action or the consequences for a party’s failure timely to act). Thus, when Congress has mandated that a particular consequence will accompany a party’s noncompliance with statutory timing provisions, courts are not free to impose other consequences or, as the majority does in this case, to fail to impose any consequence at all.
The reason is simple: When Congress mandates that a particular consequence be imposed, it limits the court’s power to act. When the consequence is that the claim “shall be barred” or the case “shall not be maintained,” Congress has spoken in jurisdictional terms.[14] Cf. John R. Sand & Gravel, 552 U.S. at 134, 128 S.Ct. 750 (holding that 28 U.S.C. § 2501, which includes “shall be barred” language, is jurisdictional); Dalm, 494 U.S. at 609, 110 S.Ct. 1361 (holding that 26 U.S.C. § 6511(a), which, when read with 26 U.S.C. § 7422(a), includes “may not be maintained” language, is jurisdictional). The majority holds that John R. Sand & Gravel and Bowles “did not hold [the statutes at issue] jurisdictional based on the consequential language of the statute” but be *1067 cause of “a century’s worth of precedent and practice in American courts.” Op. at 1040, n. 3. But what was that “century’s worth of precedent” based on? The Court’s ancient recognition that some statutes of limitations have consequences. Kendall v. United States, 107 U.S. 123, 125, 2 S.Ct. 277, 27 L.Ed. 437 (1883) (statute of limitation “forever barred” “every claim ”); Finn v. United States, 123 U.S. 227, 233, 8 S.Ct. 82, 31 L.Ed. 128 (1887) (holding that the express words of the act of 1863 — stating claims were “forever barred” — was a condition to the right to a judgment against the United States and the court must dismiss the petition if the condition was not satisfied). Such consequences speak to “the courts’ statutory ... power to adjudicate the case.” Steel Co. v. Citizens for Better Env’t, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). To illustrate this point, one asks: What statutory power does a court have to adjudicate a claim which, according to congressional mandate, “shall be barred” or “shall not be maintained?” The answer is simple: None.[15] It seems natural, then, to conclude that when a statute includes such language, it speaks in jurisdictional terms. See Landgraf v. USI Film Prods., 511 U.S. 244, 274, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (“[Jjurisdictional statutes speak to the power of the court rather than to the rights of obligations of the parties.” (citation omitted)).[16]
Section 2401(b) falls into the second category identified above. It does not merely specify what a party must do; it specifies the consequences of a failure to act according to its time limit. If action is not begun *1068 within six months after the agency mailed its final denial of the claim, such claim “shall be forever barred.” See 28 U.S.C. § 2401(b). Because the court has no statutory power to adjudicate such a claim, I would hold that, unlike the statute considered in Holland, § 2401(b) “set[s] forth an inflexible rule requiring dismissal whenever its clock has run.” Holland, 130 S.Ct. at 2560. In that manner, and unlike the statute considered in Henderson, the language of § 2401(b) “provide[s] clear evidence[] that the provision was meant to carry jurisdictional consequences.” Henderson, 131 S.Ct. at 1204. Thus, its pronouncement “speak[s] in jurisdictional terms” or, at the very least, “refer[s] in any way to the jurisdiction of the district courts.” Reed Elsevier, 559 U.S. at 165, 130 S.Ct. 1237.[17]
The majority calls my delineation of statutes of limitations a “grand theory”. Op. at 1039. I appreciate their praise, but I humbly submit there is nothing “grand” about following the “clear evidence” provided by Congress and the Supreme Court.
C. The Importance of the Term “Forever.”
The majority escapes this rather straightforward conclusion with the assertion that “ § 2401(b) merely states what is always true of statutory filing deadlines: once the limitations period ends, whether extended by the application of tolling principles or not, a plaintiff is ‘forever barred’ from presenting his claim to the relevant adjudicatory body.” Op. at 1038 (citing Kubrick, 444 U.S. at 117, 100 S.Ct. 352).[18] The majority has simply written the term “forever” out of the statute, ascribing it no meaning nor importance at all. It is a mere “vestige of mid-twentieth-century congressional drafting conventions,”[19] Op. at 1039, and adds nothing that the statute would not say without it, because all statutes of limitations, if applicable, bar claims “forever,” see Op. at 1038-39.
*1069 But the majority fails to consider the standard canon of statutory construction that requires courts to give meaning, if possible, to each of a statute’s terms. See Lowe v. SEC., 472 U.S. 181, 208 n. 53, 105 S.Ct. 2557, 86 L.Ed.2d 130 (1985) (“[W]e must give effect to every word that Congress used in the statute.”); see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012) (explaining that “[t]he surplus-age canon holds that it is no more the court’s function to revise by subtraction than by addition.”). To the majority, the term “forever” is tautological; it has no meaning whatsoever. But that is not the view of well-established dictionaries at the time the statute was drafted. See, e.g., Webster’s New International Dictionary 990 (2d ed.1943) (defining the adverb “forever” as “1. For a limitless time or endless ages; everlastingly; eternally,” and “2. At all times; always; incessantly,” and identifying “invariably” and “unchangeably” as synonyms).
Usage of the term “forever,” as in “forever barred,” connotes something that obtains under any and all circumstances, something that is invariably so. But this is nothing new. In Kendall v. United States, the Supreme Court interpreted a statute of limitations which included the phrase “forever barred” and stated: ‘What claims are thus barred? The express words of the statute leave no room for contention. Every claim-except those specially enumerated-is forever barred unless asserted within six years from the time it first accrued.” 107 U.S. at 125, 2 S.Ct. 277 (emphasis added). Forever, as in “forever barred”, has an inclusionary meaning — “every claim” — as well as a temporal meaning — for all time. Kendall has continued to be cited approvingly in Sonano v. United States, 352 U.S. at 273, 77 S.Ct. 269,[20] and John R. Sand & Gravel, 552 U.S. at 134, 128 S.Ct. 750, on the way to holding statutes of limitations “jurisdictional.”
As used in § 2401(b), then, the term “forever” means that an FTCA claim is invariably barred unless a civil action is commenced within the six-month period following final denial of the administrative claim. Moreover, according to the majority’s theory, the fact that Congress included “forever barred” language in “various other statutes enacted in the mid-twentieth century,” see Op. at 1039, must mean that Congress merely plugged boilerplate language into these provisions, without thinking or assigning any special meaning to the words it chose to employ. But the fact that Congress included the term in various limitations periods, and not all limitations periods, suggests the exact opposite is true: On the occasions when Congress used the term “forever barred,” it did so intentionally and for a reason. It is especially telling that Congress did not adhere to the majority’s claimed “drafting convention” when, in 1948, it drafted § 2401(a), the very section that precedes the one here in issue. See Act of June 25, 1948, chap. 646, 62 Stat. 971 (June 25, 1948) (“Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.”); see also Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (“[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and pur *1070 posely in the disparate inclusion or exclusion” (citations omitted)).
The majority finally holds that if “forever” does mean anything, it merely focuses on time and emphasizes that “once barred, [a FTCA claim] is precluded permanently, not temporarily or until some later event occurs” and that “the word ‘forever’ cannot bear [the] weight” that I give it. Op. at 1041, n. 4. However, our canons of construction cannot bear the lack of weight the majority gives it, see Lowe, 472 U.S. 181 at n. 53, 105 S.Ct. 2557, and neither can our history. See Kendall, 107 U.S. at 125, 2 S.Ct. 277.
I do not subscribe to the facile construct that we can read “forever barred” to mean nothing more than “barred.” Nor do I believe “forever” is a non-cipher. “We are not free to rewrite the statutory text.” McNeil, 508 U.S. at 111, 113 S.Ct. 1980. By providing that claims not presented within the time prescribed “shall be forever barred,” Congress clearly expressed its intention that “every claim” (Kendall, 107 U.S. at 125, 2 S.Ct. 277) would be invariably barred, not sometimes barred so that equitable considerations might be held to extend the time in which to begin actions on such claims.
D. Ninth Circuit Precedent
The majority relies on three of this court’s previous opinions to support its conclusion that § 2401(b)’s “shall be forever barred” language does not mean that the statute’s time limit is jurisdictional.[21] See Op. at 1038-39. It first relies on Cedars-Sinai Medical Center v. Shalala, 125 F.3d 765, 770 (9th Cir.1997), which held that § 2401(a) is not jurisdictional. In fairness, the majority notes that this opinion’s continued vitality was called into question by Aloe Vera of America, Inc. v. United States, 580 F.3d 867, 872 (9th Cir.2009) (“To the extent that Cedars-Sinai is still valid after John R. Sand, the holding in Cedars-Sinai does not dictate the jurisdictional nature of section 7431(d).” (citation omitted)). It dismisses that statement, however, because it “was made without the benefit of the Supreme Court’s most recent decisions clarifying the distinction between jurisdictional and nonjurisdictional rules.” Op. at 1038 n. 2. Of course, this claim gets us nowhere, because Cedars-Sinai was also decided without the benefit of those decisions. Thus, we cannot blindly rely on Cedars-Sinai; instead, we must examine whether it accords with the Supreme Court’s most recent guidance.[22]
*1071 Cedars-Sinai’s analysis of the jurisdictional question is simple and brief. See Cedars-Sinai, 125 F.3d at 770. The court held: “Because the statute of limitations codified at 28 U.S.C. § 2401(a) makes no mention of jurisdiction but erects only a procedural bar, ... we hold that § 2401(a)’s six-year statute of limitations is not jurisdictional, but is subject to waiver.” Id. (citations omitted). Two problems with Cedars-Sinai’s analysis lead me to conclude that it is no longer good law.
First, Cedars-Sinai appears to erect an absolute rule that a statute of limitations is jurisdictional only when it specifically mentions the term “jurisdiction.” See Cedars-Sinai, 125 F.3d at 770. Since Cedars-Sinai was decided, however, the Supreme Court has advised that Congress “need not incant magic words ... to speak clearly [about jurisdiction].” Sebelius, 133 S.Ct. at 824.[23] A requirement that Congress use the term “jurisdiction” runs afoul of this instruction. Moreover, the Court has elarified that a statute of limitations may be jurisdictional when it “speak[s] in jurisdictional terms or refer[s] in any way to the jurisdiction of the district courts.” Reed Elsevier, 559 U.S. at 165, 130 S.Ct. 1237 (emphasis added). As previously discussed, one way to refer to the courts’ jurisdiction is to “suggest ... that the provision was meant to carry jurisdictional consequences.” Henderson, 131 S.Ct. at 1204. Cedars-Sinai failed to appreciate that, by providing that any claim not filed within the time specified “shall be barred,” § 2401(a) limited the courts’ power to act and, thus, referred to the courts’ jurisdiction.
Second, Cedars-Sinai relied heavily on Irwin’s quotation of 28 U.S.C. § 2501, which the Court had deemed jurisdictional in Soriano v. United States, 352 U.S. 270, 77 S.Ct. 269,1 L.Ed.2d 306 (1957).[24] After Irwin, there was initially good reason to believe Soriano had been overruled. See Irwin, 498 U.S. at 98, 111 S.Ct. 453 *1072 (White, J., concurring in part and concurring in the judgment) (“Not only is the Court’s holding inconsistent with our traditional approach to cases involving sovereign immunity, it directly overrules a prior decision by this Court, Soriano v. United States.” (citation omitted)). Because it seemed Irwin had overruled Soriano, it also seemed the terms “shall be barred” were insufficient to make a statute jurisdictional. If that had been true, GedarsSinai may have been correct. But the Court has since clarified Irwin and reaffirmed Soriano’s vitality. See John R. Sand & Gravel, 552 U.S. at 137, 128 S.Ct. 750 (“[T]he Court [in Irwin], while mentioning a case that reflects the particular interpretive history of the court of claims statute, namely Soriano, says nothing at all about overturning that or any other case in that line. Courts do not normally overturn a long line of earlier cases without mentioning the matter.” (citations omitted)). Given this clarification, and Cedars-Sinai’s tension with intervening Supreme Court decisions, I would hold that it was incorrectly decided and is of no precedential value on this issue. See Oregon Natural Desert Ass’n v. U.S. Forest Serv., 550 F.3d 778, 782-83 (9th Cir.2008) (explaining that circuit precedent is “effectively overruled” when its “reasoning or theory ... is clearly irreconcilable with the reasoning or theory of intervening higher authority.” (internal quotation marks and citations omitted)).
The majority then cites Partlow v. Jewish Orphans’ Home of Southern California, 645 F.2d 757, 760-61 (9th Cir.1981), abrogated on other grounds by Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989), and Mt. Hood Stages, Inc. v. Greyhound Corp., 616 F.2d 394, 396-407 (9th Cir.1980), as instances where this court has held that the language “shall be forever barred” did not render a statute jurisdictional. See Op. at 1039. Of course, these cases predate all of the Supreme Court’s recent guidance as well. For that reason, we should once again take a critical look at their reasoning before relying on them.
The Partlow court held that equitable tolling could be applied to 29 U.S.C. § 255, the statute of limitations applicable to actions brought under the Fair Labor Standards Act. See Partlow, 645 F.2d at 760-61. Interestingly, the court did not conduct any in-depth analysis of the statute’s text, context, or historical treatment. Indeed, the Partlow opinion does not once quote the statute’s text or even mention the phrase “shall be forever barred.” See id. at 757-61. Instead, the court relied on opinions from two of our sister circuits, each of which held that § 255 could be equitably tolled. See id. at 760 (citing Ott v. Midland-Ross Corp., 523 F.2d 1367, 1370 (6th Cir.1975), and Hodgson v. Humphries, 454 F.2d 1279, 1283-84 (10th Cir.1972)). It then noted that “courts have often stated that equitable tolling is read into every federal statute of limitations.” Id. (citation omitted) (emphasis added). It then concluded that the statute should be tolled in the circumstances of that case. See id. at 760-61.
If it were unclear at the time Partlow was decided, it has since become abundantly clear that equitable tolling is not to be read into every federal statute of limitations. See John R. Sand & Gravel, 552 U.S. at 133-34, 128 S.Ct. 750 (explaining that some federal statutes of limitations— such as 28 U.S.C. § 2501, for instance— must be treated as jurisdictional, so that courts are forbidden to “consider whether certain equitable considerations warrant extending [the] limitations period[s]” they contain). Moreover, Partlow fails to conduct the kind of analysis required by the Court’s more recent decisions. See Reed Elsevier, 559 U.S. at 166, 130 S.Ct. 1237 (providing that “the jurisdictional analysis *1073 must focus on the ‘legal character’ of the requirement, which we discern[ ] by looking to the condition’s text, context, and relevant historical treatment” (citations omitted)). For these reasons, I would hold that Partlow is today flat wrong, and of no precedential value on the question presently before the court.
In Mt. Hood Stages, this court held that equitable tolling could be applied to 15 U.S.C. § 15b. See Mt. Hood Stages, 616 F.2d at 396. It is once again telling that the court did not conduct any in-depth analysis of the statute’s text or even mention the statute’s phrase “shall be forever barred.” See id. at 396-406. It is clear, then, that the decision was not based on a determination that the statute did not refer in any way to the courts’ jurisdiction. In a word, Mt. Hood Stages skipped the first, Court-required step of textual analysis for a consideration of the statute’s purpose in a regulatory scheme. See Reed Elsevier, 559 U.S. at 166, 130 S.Ct. 1237.[25] Instead, the decision was based on the court’s conclusion that “tolling the running of limitations serves the important federal interest in accommodating enforcement of the Sherman Act with enforcement of the Interstate Commerce Act, and is not inconsistent with the purposes of the Clayton Act’s limitation period.” Id. at 396.
In particular, the Mt. Hood Stages court found that tolling would “contribute[ ] to a reasonable accommodation of the [Interstate Commerce Commissionj’s responsibility for furthering the national transportation policy with the responsibility of the courts to effectuate the national antitrust policy.” Id. at 397. Because the case “involved subject matter Congress ha[d] given the Commission jurisdiction to regulate,” it “created a dispute only the Commission could resolve.” Id. (emphasis added). The court noted that, “[i]f Mt. Hood had filed [its] antitrust suit ... prior to the Commission determination [of a particular factual issue],” accommodation of the Clayton and Interstate Commerce Acts would have compelled “the court ... to dismiss or stay the suit pending the necessary administrative determination.” Id. at 399. Thus, “[congressional purposes under the two statutory regimes would be served by tolling the statute of limitations during the Commission proceeding.” Id. at 400. For that reason, the court held that the statute of limitations could be “tolled pending resort to an administrative agency for a preliminary determination of issues within its primary jurisdiction.” Id. at 405; see also Pace Indus., Inc. v. Three Phoenix Co., 813 F.2d 234, 241 (9th Cir.1987) (“[0]ur decision [in Mt. Hood Stages ] rested on considerations of federal policy and primary jurisdiction which are not present here.”).
Contrary to the majority’s implication, see Op. at 1038, Mt. Hood Stages does not stand for the proposition that “shall be forever barred” does not refer to the courts’ jurisdiction. Indeed, a statute may refer to the courts’ jurisdiction and yet not be jurisdictional, much like a statute which does not speak in jurisdictional terms may still be jurisdictional. See United States v. Brockamp, 519 U.S. 347, 352, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997) (holding that the timing requirements of 26 U.S.C. § 6511 are jurisdictional, even though the statute does not refer to the courts’ jurisdiction, because of the provision’s “detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions”). In short, even a statute that refers in some way to the courts’ jurisdiction may not be jurisdictional when, for example, Congress has created dual statutory regimes, such as those involved in Mt. Hood Stages, that essentially require toll *1074 ing for their accommodation. Of course, there are no such dual regimes at issue in this case, nor does this case involve the sort of federal policy and primary jurisdiction considerations that animated the court’s opinion in Mt Hood Stages. Thus, I would hold that Mt. Hood Stages offers no useful guidance on the question whether § 2401(b)’s language refers to the courts’ jurisdiction.
In defense of Partlow and Mount Hood Stages, the majority states that these cases still “undermine the notion that Congress intended through the use of magic words ... to establish jurisdictional bars in statutes allowing for civil suits against private parties.” Op. at 1041, n. 5. Of course, this argument is merely a straw man; we all agree that Congress never uses “magic words” to establish jurisdiction. See supra, Bea Dissent at 1068, n. 17.
III. The Statute’s Purpose
As earlier noted, in John R. Sand & Gravel, the Court identified the kinds of goals that make statutes of limitations jurisdictional: “[Jurisdictional] statutes of limitations ... seek not so much to protect a defendant’s case-specific interest in timeliness as to achieve a broader system-related goal, such as facilitating the administration of claims, limiting the scope of a governmental waiver of sovereign immunity, or promoting judicial efficiency.” 552 U.S. at 133, 128 S.Ct. 750. Consideration of each of the goals outlined in John R. Sand & Gravel illustrates that § 2401(b)’s broad, system-related purposes require us to find that its timing provisions are indeed jurisdictional.
A. Section 2401(b) Facilitates the Administration of Claims
The Court has held that § 2401(b)’s “obvious purpose” is to “encourage the prompt presentation of claims.” See United States v. Kubrick, 444 U.S. 111, 117, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).[26] The requirement that a civil action be filed within six months of a denial of an administrative claim guarantees that the civil action will commence while the denial of the claim is relatively fresh. For actions filed within that time period, the Department of Justice, which will defend the cases, will be able to access the relatively fresh memories of the administrators who denied the claim. It is also more likely that those administrators will be on the job six months after the denial of the claim than would be the case if the denial had taken place years before.
*1075 B. Section 2401(b) Limits a Waiver of Sovereign Immunity
The Court has held that § 2401(b) limits the waiver of sovereign immunity expressed in the FTCA. See Kubrick, 444 U.S. at 117-18, 100 S.Ct. 352. In particular, the Court has stated:
“We should ... have in mind that the [FTCA] waives the immunity of the United States and that in construing the statute of limitations [expressed in § 2401(b) ], which is a condition of that waiver, we should not take it upon ourselves to extend the waiver beyond that which Congress intended.”
Id. (emphasis added). This passage clearly identifies § 2401(b) as a provision “limiting the scope of a governmental waiver of sovereign immunity,” which is exactly the kind of broader, system-related goal that makes a statute’s time limit “more absolute.” See John R. Sand & Gravel, 552 U.S. at 133, 128 S.Ct. 750; Op. at 1046.
The majority agrees that the FTCA “is predicated on a sovereign immunity waiver.” Op. at 1046. Further, the majority admits that many of the cases upon which they rely — Auburn Regional Medical Center, Gonzalez, Henderson, Holland, and Bowles — do not involve issues of government immunity and therefore “may not raise precisely parallel sovereign immunity concerns” as , are now before us. See Op. at 1046 n. 12. The majority is unable to deny that (1) the FTCA limits waiver of sovereign immunity and therefore meets a goal that makes statutes of limitations jurisdictional under John R. Sand & Gravel, or (2) this difference distinguishes the FTCA and § 2401(b) from other cases on which the majority tries to rely.
C. Section 2401(b) Promotes Judicial Efficiency
First, like all statutes of limitations, § 2401(b) “protects] ... the courts from having to deal -with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise.” See Kubrick, 444 U.S. at 117, 100 S.Ct. 352. By promoting the prompt presentation of claims, § 2401(b) seeks to limit the amount of evidence lost to time and ensure that courts will adjudicate eases with complete records. See id.
Second, when read together with § 2675, it is clear that § 2401(b) was intended to protect against the burdens of claims filed outside of its time prescriptions. In McNeil v. United States, the Court held that § 2675’s administrative exhaustion requirement was jurisdictional. 508 U.S. 106, 111-12, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993). There, the petitioner filed a complaint in federal district court alleging that the United States Public Health Service had injured him while conducting experimentation on prisoners in the custody of the Illinois Department of Corrections. See id. at 108, 113 S.Ct. 1980. Four months later, he submitted a claim for damages to the Department of Health and Human Services. See id. at 109, 113 S.Ct. 1980. After the Department denied the claim, the petitioner sent the district court a letter and asked that it permit him to commence his legal action. See id. The court held that it lacked jurisdiction to entertain an action commenced before satisfaction of § 2675’s administrative exhaustion requirement. See id. The Seventh Circuit affirmed and held that the petitioner had filed his action too early. See id.
The Supreme Court affirmed and held that § 2675’s administrative exhaustion requirement was a jurisdictional prerequisite to filing suit under the FTCA. See id. at 112-13, 113 S.Ct. 1980. As relevant here, it noted that “every premature filing of an action under the FTCA imposes some burden on the judicial system....” Id. at 112, *1076 113 S.Ct. 1980. Similar burdens are imposed on the judicial system when actions are filed late, accompanied by claims that the court should toll the running of the statute of limitations for equitable reasons which may or may not justify the plaintiffs tardiness. As was the ease for premature filings in McNeil, “the burden may be slight in the individual case.” Id. But § 2401(b) “governs the processing of a vast multitude of claims.” Id. For that reason, “adherence to the straightforward statutory command” is the best way to promote “[t]he interest in orderly administration of this body of litigation.” Id.
Because § 2401(b) serves each of the three system-related purposes identified in John R. Sand & Gravel as making statutory time limits “more absolute,” equitable tolling should not be applied here. Instead, we should hold that § 2401’s time limits are jurisdictional in nature.
IV. The Statute’s Context
Section 2401(b)’s context includes its placement in the larger statutory scheme, as well as any relevant exceptions Congress may have legislated. It also includes the Supreme Court’s “interpretation of similar provisions in many years past.” Reed Elsevier, 559 U.S. at 168, 130 S.Ct. 1237.
A. The Supreme Court’s Interpretation of Similar Provisions
The majority correctly notes that “there has not been ... a venerable, consistent line of [Supreme Court] cases treating the FTCA limitations period as jurisdictional” and, indeed, that “there is no Supreme Court precedent on the question.”[27] Op. at 1045. Still, the Supreme Court has examined similar provisions and offered guidance useful here. As previously stated, Kubrick and John R. Sand & Gravel, taken together, strongly suggest that § 2401(b)’s time limits are jurisdictional.
The Court’s analysis in McNeil only bolsters this conclusion. There, the Court held that 28 U.S.C. § 2675(a) “bars claimants from bringing suit in federal court [under the FTCA] until they have exhausted their administrative remedies.” McNeil, 508 U.S. at 113, 113 S.Ct. 1980. This requirement is jurisdictional. Courts cannot entertain a suit brought before exhaustion of administrative remedies, even if the claimant exhausts those remedies before “substantial progress [is] made in the litigation,” because such a suit was filed too early. Id. at 110-11, 113 S.Ct. 1980. Here, there is no dispute that, like the petitioner in McNeil, Wong filed her action before denial of her administrative claim and was similarly premature.
The majority emphasizes that § 2675(a) is located in chapter 171 and that Congress expressly conditioned the district courts’ jurisdiction upon plaintiffs’ compliance with the provisions of that chapter. See Op. at 1042. In McNeil, however, the Court did not even mention this fact. Instead, it based its decision on two considerations: (1) the statutory text is unambiguous and expresses Congress’s intent to require complete exhaustion of administrative remedies, and (2) “[e]very premature filing of an action under the FTCA impos *1077 es some burden on the judicial system and on the Department of Justice which must assume the defense of such actions.” McNeil, 508 U.S. at 111-12, 113 S.Ct. 1980. With respect to the premature filing, the Court noted that, “[ajlthough the burden may be slight in an individual case, the statute governs the processing of a vast multitude of claims,” such that “[t]he interest in orderly administration of this body of litigation is best served by adherence to the straightforward statutory command.” Id.
The Court’s language suggests once again that the FTCA’s timing requirements fit into the jurisdictional category. See John R. Sand & Gravel, 552 U.S. at 133, 128 S.Ct. 750 (identifying “facilitating the administration of claims” as one of the broader, system-related goals that makes a statutory time limit “more absolute”). In McNeil, the Court took a systemic view of its decision; it was concerned with the “orderly administration of this body of litigation” precisely because § 2675(a) “governs the processing of a vast multitude of claims.” McNeil, 508 U.S. at 112, 113 S.Ct. 1980. Because the same is true of § 2401(b), our analysis should feature the same concern. And, when one takes this more systemic view of § 2401(b), one will surely find that every premature — or late — filing imposes a burden on the judicial system and on the Department of Justice and agree with the Court that “strict adherenee to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.” Id. at 113, 113 S.Ct. 1980.[28]
B. Placement
Seeking another interpretive tool to support its position, the majority emphasizes the fact that § 2401(b) is located in a provision separate from the FTCA’s jurisdiction-granting provision. See Op. at 1042. With respect, this fact is irrelevant. As the Court has explained, “some time limits are jurisdictional even though expressed in a separate statutory section from jurisdictional grants, while others are not, even when incorporated into the jurisdictional provisions.” Barnhart, 537 U.S. at 159 n. 6, 123 S.Ct. 748 (citations omitted). “Formalistic rules do not account for the difference, which is explained by contextual and historical indications of what Congress meant to accomplish.” Id.
Even more problematic to the majority’s analysis of the FTCA’s reorganization in 1948, see Op. at 1043, is the inconvenient enactment of a law rejecting placement in the Act as a valid interpretive tool. The majority acknowledges that, before 1948, Congress had expressly conditioned the grant of jurisdiction over tort claims against the United States upon plaintiffs’ compliance with, among other things, the FTCA’s original limitations provision. See *1078 Op. at 1043. In 1948, however, Congress reorganized the FTCA and placed the limitations provision in chapter 161 and other provisions, such as § 2675, in chapter 171. See Op. at 1043. It appears the majority would conclude from this fact that Congress intended to separate jurisdictional requirements (§ 2675) from non jurisdictional ones (§ 2401). Congress, however, expressly rejected this possible reading of its reorganization efforts by an enactment of law. See Pub.L. No. 773, 62 Stat. 869, 991 (1948) (“No inference of a legislative construction is to be drawn by reason of the chapter in Title 28, Judiciary and Judicial Procedure, ... in which any section is placed.”). The majority simply ignores this Act of Congress, perhaps because it cuts directly against the majority’s desired result: interpretive value based on the statute’s placement.
Congress clearly stated that the placement of § 2401 in chapter 161 was not intended to change the way it should be interpreted. If Congress intended to condition the grant of jurisdiction over tort claims against the United States on compliance with the limitations period, the re-codification in 1948 should not be read to alter that intent. That Congress later amended the jurisdiction-granting provision to provide that the district courts would have exclusive jurisdiction over FTCA actions “[sjubject to the provisions of chapter 171 of this title,” 28 U.S.C. § 1346(b)(1), says nothing about the jurisdictional status of a provision located in chapter 161.
C. The Significance of § 2401(a)’s Exceptions
“[A]s a general rule, ... Congress’s use of certain language in one part of [a] statute and different language in another can indicate that different meanings were intended.” Sebelius, 133 S.Ct. at 825. As relevant here, § 2401(b) enumerates no exceptions, while § 2401(a) provides that “action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases.” 28 U.S.C. § 2401(a). The relevant meaning to be inferred from Sebelius’ interpretive canon quoted above is that Congress did not intend for any exceptions to be applied to § 2401(b). The majority is correct that this canon, standing alone, does not constitute a “clear statement” by Congress. See Op. at 1044. The canon can, however, “tip the scales when a statute could be read in multiple ways.” Sebelius, 133 S.Ct. at 826. I would not hold that consideration of this canon alone dictates a conclusion that § 2401(b)’s time limit is jurisdictional, but it reinforces that conclusion when considered with the statute’s text and context.
V. Conclusion
Congress clearly expressed its intent that § 2401(b) would have “jurisdictional” consequences. Jurisdictional treatment accords with the statute’s text and the Supreme Court’s analysis of similar provisions. For these reasons, equitable tolling should not be applied to the time limits contained in § 2401(b). I respectfully dissent.

. Of course, this logic dictates that the requirements of Chapter 171 are also jurisdictional. At least two Circuit Courts have so held in accord with this reasoning. See Mader v. United States, 654 F.3d 794, 807 (8th Cir.2011) (en banc) (relying on the “[s]ubject to" language of § 1346(b) in finding the presentment requirements of 28 U.S.C. § 2675(a) jurisdictional); White-Squire v. U.S. Postal Serv., 592 F.3d 453, 457-58 (3d Cir.2010) (relying on the same in finding the sum certain requirement of 28 U.S.C. § 2675(b) jurisdictional). But see Parrott v. United States, 536 F.3d 629, 634-35 (7th Cir.2008) (holding that the statutory exceptions of 28 U.S.C. § 2680 are not jurisdictional, notwithstanding the language of § 1346(b)).

. In a footnote, the majority suggests that the phrase " '[s]ubject to’ is more sensibly read to mean that litigants have to follow the prescribed procedures, not that each and every one of those procedures, if not followed, gives rise to the ‘drastic’ consequences that follow from lack of subject matter jurisdiction.” Maj. Op. at 1044 n. 9. This interpretation not only ignores the ordinary meaning of "subject to,” but it would render the opening clause of § 1346(b) surplusage. The very existence of the "prescribed procedures,” as standalone statutory provisions, "means that litigants have to follow [them].” Thus, the "[sjubject to” clause of § 1346(b) would have no substantive import under the majority’s reading.

.The Supreme Court has repeatedly relied on the Reviser's Notes in determining whether a substantive change was intended through the 1948 Act. See, e.g., John R. Sand & Gravel, 552 U.S. at 136, 128 S.Ct. 750; Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 831, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989).

. The same purpose was carried out with respect to the jurisdiction-granting provision, which was consolidated in § 1346 with the other provisions of Title 28 granting jurisdiction in civil actions against the government. See 1948 Act, § 1, 62 Stat. at 933; see also William W. Barron, The Judicial Code: 1948 Revision, 8 F.R.D. 439, 445 (1949) ("The statutes conferring jurisdiction ... are consolidated into a single section. The revised section consolidates and clarifies three widely separated provisions of the former code.").

. As described below, the legislative history is particularly probative of congressional intent in the instant case given that the focus is on the statutory scheme as enacted by Congress, and given that this enactment occurred only two years prior to the adoption of the current statutory language.

. The majority contends that, under my treatment of the legislative history, the limitations period would remain jurisdictional regardless of "what Congress wrote into the FTCA’s jurisdictional grant in 1948.” Maj. Op. at 1044. Hardly the case. If Congress truly intended to alter the provision’s jurisdictional status, it could have provided an affirmative statement to this effect in the text of the 1948 Act, in the Reviser’s Notes, or elsewhere in the legislative history. See Barron, supra, at 446 ("Congress ... included] in its reports the complete Reviser’s Notes to each section in which are noted all instances where change is intended and the reasons therefor.”). The requirement that Congress affirmatively express such an intent is not one I have created, but one that is mandated as a matter of Supreme Court doctrine. See Keene Corp., 508 U.S. at 209, 113 S.Ct. 2035.

. In Irwin, the petitioner was fired from his job by the Veterans' Administration ("VA”). See id. at 90, 111 S.Ct. 453. He filed a complaint with the VA, alleging that it had unlawfully discharged him on the basis of race and physical disability. See id. at 91, 111 S.Ct. 453. The VA dismissed the complaint, and the Equal Employment Opportunity Commission ("EEOC”) affirmed that decision. See id. The petitioner had the right to file a civil action in district court but was required to do so within 30 days of the EEOC's affirmance. See id. (citing 42 U.S.C. § 2000e-16(c)). The petitioner filed a complaint in district court 44 days after his attorney's office received the EEOC's notice, which was only 29 days after the date on which he claimed to have received the notice. See id. The district court held that the limitations period began when the attorney’s office received the notice and granted the VA's motion to dismiss for lack of jurisdiction. See id. The Fifth Circuit affirmed and held that compliance with § 2000e-16(c)’s time limit was a jurisdictional requirement. See id. The Supreme Court held that § 2000e-16(c)'s time limit was not jurisdictional; instead, the Court held that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States.” Id. at 95-96, 111 S.Ct. 453. Because the principles of equitable tolling did "not extend to what is at best a garden variety claim of excusable neglect,” however, the Court affirmed the dismissal. See id. at 96, 111 S.Ct. 453.

. In John R. Sand & Gravel, the petitioner filed an action in the Court of Federal Claims, asserting that various Environmental Protection Agency activities on land it leased for mining purposes amounted to an unconstitutional taking of its leasehold rights. See id. at 132, 128 S.Ct. 750. The Government initially asserted that the claims were untimely under 28 U.S.C. § 2501, which provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.” See id. (quoting 28 U.S.C. § 2501). The Government later conceded that certain claims were timely, and subsequently won on the merits. See id. On appeal, the Court of Appeals for the Federal Circuit held that the action was untimely filed and should have been dismissed for that reason. See id. at 133, 128 S.Ct. 750. The Supreme Court affirmed and held that compliance with § 2501’s time limit is a jurisdictional requirement. See id. at 138-39, 128 S.Ct. 750. As noted below, the Court also explained the difference between jurisdictional statutes of limitations and those to which Irwin’s presumption can be applied. See id. at 133-34, 128 S.Ct. 750.

. The majority ignores the simple truth contained in the aphorism ascribed, perhaps apocryphally, to Abraham Lincoln: "If you call a tail a leg, how many legs has a dog? Five? No, calling a tail a leg don’t make it a leg.”

. In Henderson, the petitioner, a veteran of the Korean War who had been given a 100-percent disability rating for paranoid schizophrenia, filed a claim with the Department of Veterans Affairs ("VA”) for supplemental benefits based on his need for in-home care. See id. at 1201. The VA regional office and Board of Veterans’ Appeals denied the petitioner’s claim. See id. The petitioner filed a notice of appeal with the Veterans Court, but he missed the 120-day filing deadline by 15 days. See id. (citing 38 U.S.C. § 7266(a)). The Veterans Court dismissed the appeal for lack of jurisdiction, treating compliance with the 120-day deadline as a jurisdictional requirement. See id. at 1202. The Federal Circuit affirmed. See id. Because § 7266(a) "provide[d] no clear indication that Congress wanted the provision to be treated as having jurisdictional attributes,” the Supreme Court reversed and held that the 120-day limitation period was not jurisdictional. Id. at 1205-06.

.In Reed Elsevier, authors, some of whom had registered copyrights for their works and others who had not, sued publishers and electronic databases for copyright infringement. See id. at 158, 130 S.Ct. 1237. The parties settled and filed a motion in federal district court to certify a class for settlement and approve the settlement agreement. See id. at 159, 130 S.Ct. 1237. Ten freelance authors ("the Muchnick respondents”) objected. See id. The district court overruled those objections, certified a settlement class of freelance authors, approved the settlement, and entered final judgment. See id. The Muchnick respondents appealed, and the Second Circuit held that the district court lacked jurisdiction to certify a class of claims arising from the infringement of unregistered works. See id. at 159-60, 130 S.Ct. 1237 (citing 17 U.S.C. § 411(a), which provides, in relevant part, that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made”). The Supreme Court reversed and held that § 411(a) imposed a nonjurisdictional precondition to suit. See id. at 166, 130 S.Ct. 1237.

. In Dalm, the respondent had been appointed administratrix of her employer's estate. See id. at 598, 110 S.Ct. 1361. In return for her services, she received fees from the estate and two payments from the employer's surviving brother. See id. at 599, 110 S.Ct. 1361. The respondent reported the latter payments as gifts and paid the appropriate gift tax. See id. The Internal Revenue Service ("IRS”) audited the respondent's income tax returns and determined that the payments should have been reported as income. See id. The respondent petitioned the Tax Court for a redetermination but subsequently settled the case. See id. After she agreed to the settlement, the respondent immediately filed an administrative claim for return of the gift tax she had paid. See id. When the IRS failed to act on her claim within six months, she filed suit in district court, seeking a refund of "overpaid gift tax.” Id. at 600, 110 S.Ct. 1361. The district court granted the Government's motion to dismiss the suit for lack of jurisdiction, because the respondent's suit was untimely under the applicable statute of limitations: 26 U.S.C. § 6511(a). See id. The Sixth Circuit reversed and held that the doctrine of equitable recoupment should be applied to permit the respondent's suit to proceed. See id. The Supreme Court reversed and held that the district court did not have jurisdiction to entertain the untimely action. See id. at 610, 110 S.Ct. 1361.

. In Dalm, there were two such provisions. See id. at 601-02, 110 S.Ct. 1361 (stating that 26 U.S.C. § 7422, which provides that "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected ... until a claim for refund or credit has been duly filed with the Secretary,” and 26 U.S.C. § 6511(a), which provides that, if a taxpayer is required to file a return with respect to a tax, the "[cjlaim for refund or credit ... shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later,” were both relevant qualifications on a taxpayer's right to bring a refund suit). Because both provisions established conditions on a taxpayer's right to bring suit, the Court read them together. See id. at 602, 110 S.Ct. 1361 ("Read together, the import of these sections is clear: unless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund ... may not be maintained in any court.” (citations omitted)); see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 167 (2012) ("Perhaps no interpretive fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts.”).

. In Bowles, an Ohio jury convicted the petitioner of murder and sentenced him to 15-years-to-life imprisonment. See id. at 207, 127 S.Ct. 2360. The petitioner unsuccessfully challenged his conviction and sentence on direct appeal, and then filed a federal habeas corpus petition. See id. The district court denied habeas relief. See id. After the entry of final judgment, the petitioner had 30 days to file a notice of appeal. See id. (citing 28 U.S.C. § 2107(a)). He failed to do so. See id. Instead, he later filed a motion to reopen the period in which to file a notice of appeal under 28 U.S.C. § 2107(c), which allows district courts to extend the filing period for 14 days. See id. The district court granted the motion to reopen, but “inexplicably gave [the petitioner] 17 days,” instead of the 14 days permitted by statute. See id. The petitioner filed his notice of appeal after the 14-day period allowed by statute but within the 17 days allowed by the district court. See id. The Sixth Circuit held that it lacked jurisdiction to entertain the appeal, because the notice of appeal was untimely filed. See id. The Supreme Court affirmed and held that “the timely filing of a notice of appeal in a civil case is a jurisdictional requirement.” Id. at 214, 127 S.Ct. 2360.

. Unfortunately, the Court has not yet analyzed whether § 2401(b) is or is not jurisdictional. We must therefore use what tools the Court has given us in its discussions of similar statutory provisions and reason by analogy.

. In Barnhart, the Court addressed 26 U.S.C. § 9706(a)'s requirement that the Commissioner of Social Security assign, before October 1, 1993, each coal industry retiree eligible for benefits to an operating company or related entity, which would then be responsible for funding the assigned beneficiary’s benefits. See id. at 152-53, 123 S.Ct. 748. The Commissioner did not complete all the assignments by the statutory date, and several coal companies challenged the Commissioner's by then tardy assignments. See id. at 156, 123 S.Ct. 748. The companies obtained summary judgments in each case, and the Sixth Circuit affirmed. See id. at 157, 123 S.Ct. 748. The Supreme Court held that it was "unrealistic to think that Congress understood unassigned status as an enduring 'consequence' of uncompleted work, for nothing indicates that Congress even foresaw that some beneficiaries matchable with operators still in business might not be assigned before October 1, 1993.” Id. at 164-65, 123 S.Ct. 748. Thus, it read the statutory deadline as "a spur to prompt action, not as a bar to tardy completion of the business of ensuring that benefits are funded ... by those identified by Congress as principally responsible.” Id. at 172, 123 S.Ct. 748.

. In Holland, the petitioner was convicted of first-degree murder and sentenced to death. See id. at 2555. The Florida Supreme Court affirmed that judgment, and, on October 1, 2001, the Supreme Court denied the petition for certiorari. See id. On that date, 28 U.S.C. § 2244(d)'s one-year statute of limitations for filing a habeas petition began to run. See id. On September 19, 2002 (i.e. 12 days before the one-year limitations period expired), a state-appointed attorney filed a motion for post-conviction relief in the state court, which automatically stopped the running of the limitations period. See id. In May 2003, the state trial court denied relief. See id. By February 2005, when the Florida Supreme Court heard oral argument in the case, the petitioner and his appointed attorney rarely communicated. See id. Indeed, the petitioner asked the Florida Supreme Court to remove the attorney from his case because of a "complete breakdown in communication,” including a failure to keep him informed of the case’s status. See id. The Florida Supreme Court denied the petitioner’s request. See id. at 2556. The petitioner subsequently wrote the attorney several times and emphasized the importance of filing a timely petition for habeas corpus in federal court once the Florida Supreme Court ruled *1065 against him. See id. In November 2005, the Florida Supreme Court affirmed the denial of post-conviction relief. See id. On December 1, 2005, it issued its mandate, and the federal habeas clock began again to tick. See id. Twelve days later, the one-year limitations period expired, with the petitioner never having been informed that the Florida Supreme Court had made a ruling. See id. at 2556-57. When the petitioner learned of the adverse ruling on January 18, 2006, he immediately wrote a pro se habeas petition and mailed it to the district court. See id. at 2557. The district court held that equitable tolling was unwarranted because the petitioner did not seek help from the court system to determine when the mandate issued. See id. The Eleventh Circuit affirmed and held that the attorney’s negligence could never constitute an “extraordinary circumstance” sufficient to toll the limitations period. See id. The Supreme Court rejected the district court’s erroneous determination that the petitioner had not been diligent and the Eleventh Circuit's rigid, categorical approach. See id. at 2565. It then held that § 2244(d)'s time limit was subject to equitable tolling and remanded for further proceedings. See id. at 2565.

. In Kontrick, a creditor objected to a debt- or's discharge in a liquidation proceeding. See id. at 446, 124 S.Ct. 906. The applicable rule provided that such an objection had to be made within “60 days after the first date set for the meeting of creditors.” Id. (quoting Fed. R. Bkrtcy. P. 4004(a)). The creditor's objection was untimely under this rule. See id. The debtor did not file a motion to dismiss the objection as untimely, however, until after the Bankruptcy Court decided that the discharge should be refused. See id. The Bankruptcy Court held that the time limit was not jurisdictional, and the Seventh Circuit affirmed. See id. at 447, 124 S.Ct. 906. The Supreme Court affirmed and held that Rule 4004(a) was not jurisdictional, so that "a debtor forfeits the right to rely on Rule 4004 if the debtor does not raise the Rule’s time limitation before the bankruptcy court reaches the merits of the creditor's objection to discharge.” Id.

. Of course, if the court finds that the presumption has been rebutted or that no equitable considerations justify tolling the statute, it should dismiss the complaint for failure to comply with the statute of limitations. The key consideration here is that, when a statute does not specify mandatory consequences for failure timely to act, the court is permitted to rely on Irwin’s presumption that equitable tolling applies. Nothing in the text of that statute suggests that the presumption should not apply.

. I acknowledge that such a holding may conflict with Cedars-Sinai Medical Center v. Shalala, 125 F.3d 765, 770 (9th Cir.1997), but, for reasons discussed infra at 1069-72, I believe that case is inconsistent with subsequent Supreme Court cases and is no longer good law.
Further, by giving examples of when Congress has spoken in jurisdictional terms I am not relying on "magic words” that must be included. Op. at 1040. These phrases are merely examples of terms which mandate that a particular consequence must be imposed, and that consequence is what makes the statute jurisdictional.

. This fact separates the two kinds of statutes of limitations. When a statute does not specify a mandatory consequence, the operation of Irwin’s presumption makes sense (i.e. courts can generally assume Congress intended equitable tolling to apply unless something suggests otherwise). When Congress specifies a mandatory consequence, however, courts should assume Congress meant what it said (i.e. that the consequence is mandatory and applicable in every case).

. Unfortunately, while the Court has stated, on several occasions, that a particular statute does not speak in jurisdictional terms, see ante at 1064, it has not clarified exactly when a statute does speak in jurisdictional terms. Still, the Court has held that the statutes in the second category above are jurisdictional. See John R. Sand & Gravel, 552 U.S. at 134, 128 S.Ct. 750 (holding that 28 U.S.C. § 2501, which provides that "[ejvery claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition is filed within six years after such claim first accrued,” is jurisdictional); Bowles, 551 U.S. at 213, 127 S.Ct. 2360 (holding that 28 U.S.C. § 2107(a) and (c), which provide that "no appeal shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days after entry of such judgment, order or decree,” except that a court may "extend the time for appeal upon a showing of excusable neglect or good cause,” is jurisdictional); Dalm, 494 U.S. at 609, 110 S.Ct. 1361 (holding that 26 U.S.C. § 6511(a), which, when read with 26 U.S.C. § 7422(a), provides that "unless a claim for refund of a tax has been filed within the time limits ..., a suit for refund ... may not be maintained in any court,” is jurisdictional). It has also mentioned the kind of language that would speak in jurisdictional terms. See Henderson, 131 S.Ct. at 1204 (implying that jurisdictional language would include a suggestion "that the provision was meant to carry jurisdictional consequences”); Holland, 130 S.Ct. at 2560 (implying that a statute would speak in jurisdictional language if it "set forth an inflexible rule requiring dismissal whenever its clock has run” (internal quotation marks and citations omitted)). In any event, as the majority acknowledges, the Court has instructed that Congress "need not incant magic words ... to speak clearly.” Op. at 1036 (quoting Sebelius v. Auburn Reg’l Med. Ctr., - U.S. -, 133 S.Ct. 817, 824, 184 L.Ed.2d 627 (2013)). Thus, Congress need not explicitly state that a time limit is jurisdictional; it is free to specify consequences that relate to a court's power to adjudicate cases and trust that the court will understand what those consequences mean.

. While a statute that specifies mandatory consequences is jurisdictional, the reverse is not necessarily true. See, e.g., McNeil, 508 U.S. at 111-12, 113 S.Ct. 1980 (holding 28 U.S.C. § 2675, which does not specify mandatory consequences for noncompliance, jurisdictional). This dissent does not imply that the specification of mandatory consequences is the only way for Congress to express its intent that a statute be jurisdictional. Congress may express its intent that a statute be jurisdictional in other ways (i.e. it need not incant magic words), and, indeed, a statute may be jurisdictional for reasons other than the text. See Reed Elsevier, 559 U.S. at 166, 130 S.Ct. 1237 (2010) (instructing courts, in determining whether a statute is jurisdictional, to look to the statute's "text, context and relevant historical treatment ” (emphasis added)).

. I must confess that I have struggled to find which portion of the Court's opinion in Kubrick supports the majority's position about what is "ordinarily true of statutory filing deadlines." Op. at 1038. Surely it is not this portion: "Section 2401(b), the limitations provision involved here, is the balance struck by Congress in the context of tort claims against the Government; and we are not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims.” Kubrick, 444 U.S. at 117, 100 S.Ct. 352. And surely it is not this portion: “We should also have in mind that the Act waives the immunity of the United States and that in construing the statute of limitations, which is a condition of that waiver, we should not take it upon ourselves to extend the waiver beyond that which Congress intended.” Id. at 117-18, 100 S.Ct. 352. I simply see no support for the majority’s position in Kubrick.

.The majority’s deprecatory labelling is off by about 100 years. In Kendall v. U.S., 107 U.S. at 124, 2 S.Ct. 277, the term "forever barred” in the act of March 3, 1863, was definitively interpreted.

. John R. Sand & Gravel held that Soriano is still good law. 552 U.S. at 137, 128 S.Ct. 750.

. The majority also cites out of circuit authority — Arteaga v. United States, 711 F.3d 828, 832-33 (7th Cir.2013); Santos ex rel. Beato v. United States, 559 F.3d 189, 194-98 (3d Cir.2009); Perez v. United States, 167 F.3d 913, 916-17 (5th Cir.1999) — for the proposition that § 2401(b) is subject to tolling. However, these cases are not persuasive. Arteaga holds that because 28 U.S.C. § 2674 meant to hold the government liable in the same way as a private individual, and equitable tolling is available to private individuals, equitable tolling is available under the FTCA. Arteaga, 711 F.3d at 833. However, the Arteaga court ignores the plain language of § 2401(b) which states "to the agency to which it was presented.” A private individual may not be held liable for an agency claim. Further, Santos ignores Congress’ clear intent when it concludes that "the placement of the separate statutory savings provision does not suggest that Congress intended it to preclude equitable tolling.” Santos, 559 F.3d at 196. See Pub.L. No. 773, 62 Stat. 869, 991 (1948) ("No inference of a legislative construction is to be drawn by reason of the chapter in Title 28, Judiciary and Judicial Procedure, ... in which any section is placed.”). Finally, Perez discussed the use of the phrase "forever barred” and found it was irrelevant, but failed to consider and attempt to distinguish prior cases interpreting the term, such as Perez v. U.S., 167 F.3d at 915-18, and Finn v. U.S., 123 U.S. at 233, 8 S.Ct. 82.

. The Court's "recent guidance” includes John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008), Reed Elsevier, Inc. v. Muchnick, 559 *1071 U.S. 154, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010), Holland v. Florida, 560 U.S. 631, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010), Henderson v. Shinseki, - U.S. -, 131 S.Ct. 1197, 179 L.Ed.2d 159 (2011), and Auburn Regional Medical Center, - U.S. -, 133 S.Ct. 817.

. In Sebelius, the governing statute allowed health care providers to file, within 180 days, an administrative appeal to the Provider Reimbursement Review Board from an initial determination of the reimbursement owed for inpatient services rendered to Medicare beneficiaries. See id. at 821 (citing 42 U.S.C. § 1395oo (a)(3)). The Secretary of the Department of Health and Human Services, by regulation, authorized the Board to extend the 180-day limitation, for good cause, up to three years. See id. The Court held that the 180-day limitation period was not jurisdictional and that the regulation permitting a three-year extension was a permissible construction of the statute. See id. at 821-22. It further held that equitable tolling "does not apply to administrative appeals of the kind here at issue.” Id. at 822.

. In Soriano, the petitioner, a resident of the Philippines, filed suit in the Court of Claims to recover "just compensation for the requisitioning by Philippine guerilla forces of certain foodstuffs, supplies, equipment, and merchandise during the Japanese occupation of the Philippine Islands.” Id. at 270-71, 77 S.Ct. 269. The relevant statute of limitations provided that “[e]very claim of which the Court of Claims has jurisdiction shall be barred unless the petition thereon is filed ... within six years after such claim first accrues.” Id. at 271 n. 1, 77 S.Ct. 269 (quoting 28 U.S.C. § 2501). The petitioner filed suit more than six years after the alleged requisition claiming his delay was caused by World War II conditions in the Philippines. See id. at 271, 77 S.Ct. 269. The Court of Claims dismissed the suit without reaching the limitation question. See id. at 272, 77 S.Ct. 269. The Supreme Court affirmed and held that, by the time the petitioner filed suit, "his claim ... was barred by statute.” Id. at 277, 77 S.Ct. 269.

. This dissent analyzes § 2401(b)’s purposes in Part III, infra.

. In Kubrick, the respondent, a veteran, was admitted to a VA hospital for treatment of an infected femur in April 1968. See id. at 113, 100 S.Ct. 352. Medical personnel irrigated the infected area with neomycin, an antibiotic, until the infection cleared. See id. Six weeks later, the respondent noticed some hearing loss. See id. at 114, 100 S.Ct. 352. In January 1969, doctors informed the respondent that it was “highly possible” that the neomycin treatment caused his hearing loss. See id. In 1972, the respondent filed suit under the FTCA, alleging he had been injured by negligent treatment at a VA hospital. See id. at 115, 100 S.Ct. 352. The VA denied the respondent’s administrative claim, which he presented after he filed suit, in April 1973. See id. at 116 n. 4, 100 S.Ct. 352. The Government then filed a motion to dismiss the suit as time-barred under 28 U.S.C. § 2401(b)’s two-year statute of limitations, on the theory that the respondent’s claim accrued in January 1969, when doctors told the respondent that his hearing loss was likely caused by the neomycin treatment. See id. at 115, 100 S.Ct. 352. The district court rejected this defense and rendered judgment for the respondent. See id. The Third Circuit affirmed. See id. at 116, 100 S.Ct. 352. The Supreme Court reversed and held that claims accrue when the individual "knows both the existence and the cause of his injury.” See id. at 113, 124-25, 100 S.Ct. 352.

. The majority's focus is — jurisprudentially speaking — far too narrow. See Reed Elsevier, 559 U.S. at 168, 130 S.Ct. 1237 ("[T]he relevant question here is not ... whether [the statute] itself has long been labeled jurisdictional, but whether the type of limitation that [the statute] imposes is one that is properly ranked as jurisdictional absent an express designation.”). Section 2401(b) expresses the same "type of limitation” the Court held jurisdictional in Soriano and John R. Sand & Gravel. See 28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.”).

. The majority notes that § 2675 is silent as to the deadline for filing a properly exhausted claim in the district court and concludes that "there is no contextual reason to think that the limitations period provisions are also jurisdictional.” Op. at 1044. But § 2675 does not require only that individuals exhaust their administrative remedies; instead, it specifies that individuals must exhaust their administrative remedies first (i.e. before they file complaints in federal court). See 28 U.S.C. § 2675(a). Thus, the statute requires a particular timing of administrative exhaustion, and the McNeil Court found this timing requirement significant. See McNeil, 508 U.S. at 111, 113 S.Ct. 1980 (noting that the "petitioner’s complaint was filed too early”); id. at 112, 113 S.Ct. 1980 (addressing the burdens premature filings impose on the judicial system and the Department of Justice). Just as in McNeil, appellant Wong’s complaint was filed "too early” and imposed a burden on the judicial system and Department of Justice. Because late filings impose similar burdens on the courts and the Department of Justice, there is good reason to believe that the limitations period expressed in § 2401(b) is also jurisdictional.